## Snell, Stag, and Co. *against* I. Moses and Sons.

In an action of *assumpsit*, on the sale of goods for not delivering goods of a *certain description*, but of a different sort and quality, either an express warranty or fraud must be alleged, and the plaintiff must prove the allegations precisely as they are laid.

THIS was a special action on the case. The declaration contained four counts. The first count charged, that in consideration that the plaintiffs, at the special instance and request of the defendants, would buy of them eight bales of a certain sort of *India* goods, called *blue guineas* at, and for the price of five dollars and fifty cents for every piece, the defendants undertook and promised to " send or deliver to the plaintiffs, eight bales of *blue guineas* contain-" ing in the whole, twelve hundred pieces, and that

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

" each and every of the said bales should contain *blue*
" *guineas* only, and no other sort or kind of goods, and
" should be of the usual and customary length and breadth,
" which pieces of *blue guineas* commonly contain ; [and
" should be equal in quality and goodness to a certain piece
" of *blue guineas* produced and shewn to the said plaintiffs,
" as a sample of the said bales of *blue guineas*, to be sent
" or delivered to the said plaintiffs."] And the plaintiffs
averred that they did buy, &c. for the said price, &c. but that
the defendants did not send and deliver to the plaintiffs
eight bales, &c. of the usual and customary length and
breadth, [and equal in quality and goodness to the sample
so produced, and containing *blue guineas* only, and no
other sort or kind of goods ; ] but on the contrary, that the
bales sent, contained a few pieces of *blue guineas*, mixed
with divers other sorts and kinds of goods of inferior qua-
lity, color and goodness ; and that the small quantity of *blue
guineas* sent, were not only inferior in quality and goodness
to the sample produced, but that they and the other sorts of
goods mixed with them, were narrower and shorter than
such goods usually are, and were otherwise in bad condi-
tion, &c. The *second* count was like the first, omitting the
words between crotchets, relative to the sale by *sample.*

The *third* count stated, that in consideration that the
plaintiffs, at the special instance and request of the defen-
dants, had promised the defendants to pay to them the sum
of $6600 when they, the plaintiffs, should be thereto after-
wards requested, the defendants promised to deliver to
the plaintiffs, eight bales of a certain sort or kind of goods,
called *blue guineas*, containing a large number of pieces to
wit, 1200 pieces of *blue guineas*, and that each and every of
the said bales should contain *blue guineas* only, and no other
kind of goods, and should be the usual and customary
length and breadth, and of the value of five dollars and fifty
cents per piece, &c. when they the defendants should be there-
to afterwards requested ; and avers that the defendants did
not deliver goods of that description, &c. but instead there-
of, deceitfully and fraudulently delivered the plaintiffs eight
bales, containing a small number of *blue guineas* intermix-

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

ed with divers other sorts of goods, all of inferior quality, &c. &c. The fourth count was for money had and received to the use of the plaintiffs. The defendants plead *non assumpserunt.*

The cause was tried before Mr. Justice *Livingston*, and a special jury, at the *New-York* sittings, on the 15th of *December*, 1804. On the trial, the plaintiffs produced in evidence the original bill of parcels from the defendants, for 3 bales of *blue goods* at $5 1-2 per piece, under which was written, " Imported in the ship *Canton* from *Bengal*, entered by " *Willing* and *Francis*, at *Philadelphia*, 12th *September*, " 1801. From *Philadelphia*, &c. by *Isaac Moses and Sons*, " *October* 6th, 1801." The cartman who was employed by the plaintiffs to carry the goods, testified, that he inquired for the *blue guineas*, purchased of the defendants, who delivered him the bales which he took away, but he did not hear the defendants, or any other person in the store, call them by the name of *blue guineas.* It further appeared, from the depositions read in evidence, that the goods in question were parcel of a quantity purchased of *Willing* and *Francis*, of *Philadelphia*, by the defendants. *Francis* testified, that they were sold to the defendants as *blue cotton goods*, and that they were not of the description of goods called *blue guineas*, but were imported from *Calcutta*, and described in the invoice delivered to the defendants, by the Indian names of *gurrahs*, *marahagonges*, *cossas*, and *blue gurrahs* ; that at the time of sale of the goods to the defendants, *Willing* and *Francis* offered, at their own expense, to open the bales to ascertain whether any of the goods were damaged or not, but *S. Moses*, one of the defendants, who made the purchase, said it was unnecessary, and took the goods away, being in a haste to ship them to *New-York.* *Marahagonges* and *blue guineas* are of different lengths and breadths, as well as quality ; that the former are manufactured at *Bengal*, of a flimsy, coarse cloth, badly dyed, containing from 15, to 16 1-2 yards in length, and from 3-4 to 7-8 of a yard wide ; but that *blue guineas* are of the manufacture of the coast of *Coromandel*, of a firm good fabric, a fine dye, and generally 18 yards long, and 9-8 yard wide ;

and that during the year 1801, *Willing* and *Francis* did not sell any *blue guineas* to the defendants, nor were there, to their knowledge, any goods of that name in *Philadelphia* in the autumn of that year.

The plaintiffs, immediately after the purchase of the goods in question, shipped them to *Curracoa*, and it appeared from the evidence of their correspondent, that on opening the bales, they were found not to be of the quality of goods he had been accustomed to receive of the plaintiffs, as *blue guineas*, but were very coarse, shorter and narrower than goods of that name generally are, and some of them of a light blue color. Pieces of inferior quality and color, were intermixed with those of better quality and color, and the difference in value was estimated at 50 per cent. Had the goods been of the proper quality and kind, they might have been sold for $7 per piece, but were afterwards sold to various persons at inferior prices.

Two pieces of the goods sold by the defendants to the plaintiffs, which were a fair sample of them, were shewn to the jury, and were admitted to be a species of goods manifestly different in color, texture, length and breadth, from *Madras blue guineas*, and, in all respects, inferior to that species of goods.

*Robert Lenox* was called to prove a conversation between him and one of the defendants, in relation to the goods in question, and declared that he could not recollect the expressions used, but would give his impressions as to the substance of the conversation : this the defendant's counsel objected to, but it being allowed by the judge, the witness stated, " that on observing to one of the defendants, that it " was impossible that *blue goods* should be sold for *blue* " *guineas*, the latter replied, that people in general were un- " acquainted with the true names of the different kinds of " *India* goods, and frequently applied for them by wrong " names, and that when they asked for *blue guineas*, he was " not so much governed by the names made use of, as by " the market to which they were going, and showed goods accordingly." *William Alsee*, another witness, was called by the plaintiffs to prove the declarations and conduct of the

<div style="margin-note">

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

</div>

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

defendants, in relation to another parcel of *India* goods, purchased by him of the defendants, at that time, before the goods in question were purchased by the plaintiffs. The evidence was objected to, on the part of the defendants, but the objection was overruled by the judge. The witness stated, that in the begining of *October,* 1801, he applied to the defendant to purchase *blue guineas* for the *African* coast, and was shewn one bale, which the defendants said was all they had at that time, but that he expected some shortly from *Willing* and *Francis;* that a *Frenchman* who accompanied him, said, that this bale was real *blue guineas.* He afterwards took the number of bales he wanted ; that when the goods were opened on the *African* coast, they were found much damaged in the inside.

It further appeared, that the price of blue *marahagonges,* about the time of the purchase, was two dollars and fifty cents, and *Madras blue guineas* $6 per piece.

The defendants moved for a nonsuit, upon the ground that the evidence varied from, and did not support the plaintiffs' declaration, which motion was overruled by the judge.

The clerk of the defendants then testified, that it was the practice in the store of the defendants, to shew their goods, by stripping off the exterior covering of the bales, and permitting the purchaser to select for himself.

Several witnesses deposed, that there were various species of *blue goods* from *Bengal;* that *Madras blue guineas* were of superior quality, and that they all were generally inquired for under the name of *blue guineas.* The price of *Madras blue guineas,* was, at the time of the sale of the goods in question, about $9. On this evidence, the judge left it to the jury, whether the defendants, knowing the goods sold not to be *Madras blue guineas,* had fraudulently sold them to the plaintiffs as goods of that description.

The jury found a verdict for the plaintiffs for the sum of $2397, 19 cents. On a case made, stating the above facts, the defendants now moved to set aside the verdict, and that a nonsuit be entered, on the following grounds. 1. That the evidence of *Lenox* and *Alsec* was inadmissble. 2. That the evi-

dence produced on the trial, did not support the declaration. 3. That no express warranty, or actual fraud was proved, one of which was essential to maintain this action. 4. That the damages were excessive, and not warranted by the evidence. 5. For the misdirection of the judge.

ALBANY,
Feb. 1805.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

*Hoffman*, for the defendant.—The testimony of *Lenox* was inadmissible. The mere impressions of a witness ought never to be received in evidence. They are too uncertain to establish the truth of a fact, and if admitted as proof, it may lead to dangerous consequences. The witness ought to testify, according to his knowledge, and not according to his belief. He may have impressions on his mind, not produced by the facts he is called to prove, but derived from other sources, or his own imagination.

The admission of *Alsee*, to show the declarations and conduct of the defendants towards him, in regard to another parcel of goods, in order to prove the allegations of the plaintiffs in their suit, in respect to a different contract, was unprecedented. No rule of evidence could justify such a mode of proving a fraud, or breach of contract.

The evidence adduced at the trial did not support the declaration; there is a fatal variance between the allegations and proofs. If the plaintiffs intended to recover on the ground of fraud, it should be clearly and precisely laid in the declaration, and be proved, as alleged.— There is no pretence that the facts stated in the first and second counts as to the sale, have been proved. The plaintiffs must maintain their action, if at all, on the third count. It charges that the defendants sold to the plaintiffs eight bales, containing *blue guineas* only, of a certain length and breadth, and of a certain value. The bill of parcels, which must be considered as the contract between the parties, reduced to writing, states them to be *blue goods*, and that they came from *Bengal*. On the ground of variance, therefore, between the declaration and the proofs, the plaintiffs are not entitled to judgment. *Bristow* v. *Wright, Douglas* 665. *King* v. *Pippot*, 1 *D.* & *E.* 235. *Parkinson* v. *Lee*, 2 *East.* 814.

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
J. Moses and
Sons.

The verdict was manifestly against evidence. There must be either an express *warranty*, or fraud in the sale, to enable the plaintiffs to recover. The case of *Seixas* v. *Woods*, 2 *Caines*, 48, is full and conclusive on this point. It is not pretended that there was any warranty in this case ; and no deceit is proved as to the length or breadth of the goods. They were exposed in the store of the defendants, and subject to the inspection of the plaintiffs.— *Blue guineas*, properly so called, come from *Madras* only ; yet the *Bengal blue goods* in the ordinary language, and according to the general acceptation of purchasers, have the same denomination. They are all sold under the name of *blue goods*. It constitutes no part of the complaint of the plaintiffs that they were represented as *Madras blue guineas*. They complain only that the goods they received were of an inferior quality, and they are bound by their own averments, and cannot recover for a different cause. Yet the judge in his charge, left it to the jury on this point, whether the defendants had sold their goods to the plaintiffs, as *Madras blue guineas*, knowing them to be of a different description.

[LIVINGSTON, J. I do not recollect that I used that expression. I left the cause to the jury, on the broad question, whether the goods were sold as *blue guineas*, and not as *Madras blue guineas*.]

*Hoffman.*—There are no other *blue guineas*, except those of *Madras* ; all the others are called *blue goods*, or *blue guineas*. One circumstance is conclusive, to show that the defendants never could have intended to have sold these, as goods of the same description. The price of *Madras blue guineas* at the time, was nine dollars a piece, and the plaintiffs paid only five dollars and a half, for those they purchased. Yet the jury must have calculated the damages on the supposition that the goods were represented as *Madras blue guineas*, so that the damages are *excessive*, which forms another objection to the verdict.

*Harison* and *Riggs*, contra.—The objection to the testimony of *Lenox* has no weight. Every witness must swear

according to the impressions on his mind ; for they are the materials of his knowledge. It was only a more cautious mode of expressing his belief. He meant to state what he recollected ; the substance only of what he heard, not the exact words. The evidence of *Alsee* was proper, a. itrelated to the same parcel of goods ; and as he applied for *blue guineas*, and the defendants represented them to him as such, it was fairly to be inferred by the jury, that they knew at the time that they were not. In the case of *Beal* v. *Thatcher*, 3 *Espinasse's* cases, 194, which was an action for giving a false character, Lord *Kenyon* allowed the witness to state that the defendant had recommended the same person to him to be trusted, for it "proved a fraudulent connection between the defendant and the person recommended, and might therefore go to the jury."

[SPENCER, J. I have no doubt as to the admissibility of the evidence of *Lenox ;* nor do I see any solid objection to that of *Alsee.*]

The answer of the defendants to *Lenox*, shews that their conduct was not fair. Knowing that the goods they exposed for sale were not *blue guineas*, they take advantage of the ignorance of purchasers, who inquire for them under a different name. Honesty and fair dealing should have induced them to have mentioned the difference. *Alsee* asked for *blue guineas*, and they informed him that they should receive a parcel from *Willing* and *Francis*, yet in the letter of W. and F. it is expressly stated, that they did not represent them to the defendants as *blue guineas*, but as *blue goods ;* and their invoice specifies them under their appropriate *Indian* names. *Blue goods* is the general name, *blue guineas* the specific appellation. Suppose a farmer were to sell buck wheat for wheat, to a person unacquainted with the difference, and who asked for the latter, would such a deceit be sanctioned in a court of justice? The defendants use the term *blue goods* in their bill of parcels, presuming on the general supposition that they were *blue guineas*, and that the plaintiffs did not know the difference. Fraud is generally to be inferred from cir-

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

ALBANY,
Feb. 1806.

Snell, Stagg,
& Co.
v.
I. Moses and
Sons.

cumstances, and the jury were authorised, from all the facts before them, to make the inference. It was their peculiar province to do so, and the court ought not now to disturb their verdict, on any nice or technical objections as to the pleadings. Besides, it was agreed by the parties, that the declararation should be considered as if for a *tort*, and there is no variance, as the *deceit* and the *scienter*, are the basis of the action. The amount of the verdict does not exceed the actual loss sustained by the plaintiffs.

*Radcliff*, in reply. The question as to a nonsuit, is now to be considered precisely on the same grounds, as it stood when the motion was made at the trial, for such is the agreement in the case. The distinction between *tort* and *contract* is not correctly applied. It is true, that in actions of *trespass*, all the circumstances need not be proved precisely as they are alleged; but this action is upon a contract, which must be proved *in toto*. The allegations in the third count are not proved. There is no evidence, even by implication, that the goods should be of the value of $5, 50 cents a piece, which is a fatal variance. There is no proof of any fraud. The internal state of the bales was not examined; but they were sold as *Bengal* goods, and were understood to be such by both parties. The bill of parcels affords the strongest evidence to ascertain the meaning of the contract; the plaintiffs knew that the goods came from *Bengal*, and yet they admit, in their declaration, that some of them are *blue guineas*, and are, therefore, concluded from saying they were not. The plaintiffs possessed as much knowledge of the goods as the defendants; they took them without examination; both parties were equally ignorant of the quality or internal condition, and the purchasers, therefore, must take them at their own risk. Where there is neither express warranty, nor fraud, the rule of *caveat emptor* applies. To support this action, it should be made to appear, that some artifice or deception had been practised by the defendants. The goods are uniformly mentioned as *blue* or *Bengal goods;* the term *Madras blue guineas*, was never used by the defendants.—

The price at which they were purchased, shows most decisively that they were not sold for goods of the latter description, which were selling at a much higher rate. If the court have any doubts, they ought to grant a new trial; for the verdict is palpably against evidence, as well as the justice and merits of the case.

ALBANY,
Feb. 18 16.

Snell, Sta.g,
& Co.
v.
I. Moses &
Sons.

LIVINGSTON, J. delivered the opinion of the court. The only count in the declaration, to which the evidence is pretended to be applicable, is the third, to which, therefore, our examination will be confined. [Here he stated the averments contained in the third count.] If any sale of *blue guineas* be proved, there is no evidence either that they should be of the usual length and breadth, or of a certain value. It may well be doubted whether the first can be implied; and if there were no warranty or fraud, and it should appear that the bales had not been examined, but that both parties were equally ignorant of the length of the goods, such an inference could not be made. Be this as it may, is there any proof that each piece should be of the value of five dollars and a half? This cannot be presumed, merely from its being the price at which the plaintiffs were to take the goods, for if such an implication were to result from that circumstance, such a warranty, would be universal, unless there was a stipulation to the contrary. This is an essential part of the contract, for it cannot be said, that the jury, in assessing the damages did not take as their guide, the difference between the price paid to W. and F. and that at which they were sold to the plaintiffs, under an idea, that it was agreed, that the goods should be of the latter value. This rule of estimating the damages, allowing something for the freight from *Philadelphia* to *New-York*, and other necessary charges, would give about the sum found by the jury. If they proceeded on this calculation, it was wrong, because of the total want of proof of any agreement, that the article should be of a particular value. It was said in the argument, that as the plaintiffs proceeded on the ground of fraud, it was sufficient if the fraud were substantially made out, without inquiring whe-

Vol. I.                    P

ALBANY,
Feb. 1806.

ther the contract were proved specifically as laid in the de-
claration ; but how can it be determined that there was any
fraud in the transaction, without knowing precisely, what
was the agreement between the parties ? It is as essential
to prove the contract as declared on, with certainty, in
that case as well as in any other. This not having been
done, the plaintiffs, under the agreement stated in the case,
are entitled to a judgment of nonsuit.

<div align="right">Judgment of nonsuit.</div>