CUTLER *against* CARPENTER—*Certiorari from a Justice's Court.*

CASE, in the Court below, by *Cutler* against *Carpenter,* for fraud in the sale of a horse. At the sale, the defendant represented the horse good to work, *as far as he knew ;* whereas he was fickle, and the defendant had said, that the horse had troubled him *once,* in drawing hay. To shew, however, that he had not deceived the plaintiff, the defendant called a witness, who swore that, in a conversation with the plaintiff, he said that the defendant had *told him,* that he

A witness, on his examination in chief, after having sworn to a conversation, and stated that there was nothing in it, from which he could say that it alluded to a particular time, should

not be permitted to express his belief, as to that fact. And where such an answer was objected to, but admitted, the judgment was, for that reason, reversed.

law to be built. (12 *John. Rep.* 433. 15 *John. R.* 220.) These circular fences are matters of local concern, and are noticed, for the first time, that I can discover, in 1 *Smith & Livingston's* edition of the laws of this state, 426, by the recital in a colonial act there, passed in 1750. It recites, that the freeholders, &c. in some cities and towns, &c. are accustomed to make *circular fences for the surrounding of their lands,* &c. by which means great quantities of their lands, &c. are surrounded by a common enclosure, securing those who do not contribute towards making it ; and then provides for compelling contribution, in a summary manner, which has, by subsequent statutes, been left to town regulation.

When our ancestors first settled in this country, they found it uncultivated ; and when closes were made by the settlement and cultivation of the lands, there could be no prescription to fence ; and, therefore, the common law, authorising the writ of *curia claudenda,* being inapplicable to the state of the colony, was never introduced. (Vid. 6 *Mass. Rep.* 94, 5.) Provisions respecting fences were early made by the legislature of the colony of *New-York,* which have been continued since the revolution, nearly in their colonial shape. These statutes are the foundation of all the obligations imposed on the citizens by law, to make and repair fences. (*Id.* 95. Vid. 1 *Laws N. Y.* by *Smith & Livingston,* 426, 427. Do. by *Van Schaick,* 3, 289-90. 2 do. by *Jones & Varick,* 337, 8, 9. 2 do. by *Greenleaf,* 170, 2, 3. 1 do. by *Kent & Radcliff,* 331, 2, 3. 2 do. by *Woodworth & Van Ness,* 131, 3, 4.) Their great object is to establish the rights and obligations of tenants of adjoining closes, respecting the making and maintaining partition fences. These, where their proportion of the partition fence is assigned to them, or to those under whom they claim, by the fence

NEW YORK,
May, 1823.

CUTLER
v.
CARPENTER.

had had one scrape with the horse ; but there was *nothing in the conversation from which he could say that the plaintiff alluded to the time of the sale, as the period when the defendant had given him this information.* He was then asked by the defendant's counsel, what his *belief* was as to that fact ? This question was objected to by the plaintiff's counsel, but the objection was overruled. He then answered that *he took it, that the time of sale was meant.* Verdict and judgment for the defendant.

*T. Lawyer,* for the plaintiff in error.

*E. Holliday,* for defendant.

viewers, pursuant to the statute, have no right to a distress, or action, for any injury arising from the absence or defect of the fence, which they are thus bound to build or repair, provided such injury arise from the intrusion of cattle, which are rightfully on the adjoining land. The rights of persons, not having any interest in either of the adjoining closes, remain unaffected by the statute, and are to be defined and protected by the common law. (6 *Mass. Rep.* 97-8.) When the proportion has been ascertained, instead of averring, in pleading, that a tenant has used, by prescription, to make and repair, in the technical form, it is sufficient to allege, that he is obliged, by law, to make and repair, and give the assignment in evidence. (*Id.* 96.)

2. An agreement, settling the proportions of the partition fence, would, doubtless, have the same effect as an assignment under the statute ; though, in order to be effectual, it must be made between the parties to the suit, or those under whom they claim. (4 *John. Rep.* 414-15. 6 *Mass. Rep.* 97.) Ch. Justice *Parsons,* in speaking of these agreements, says, that, " When there has been no assignment, but only an agreement executed by the tenants of the adjoining closes, it may be a question whether such agreement shall have the force of an assignment, and if not, whether the tenant, whose cattle have escaped, can plead such agreement in bar of an action of trespass, or must have his remedy by an action on the agreement. It is true, that a *curia claudenda* does not lie, but against a tenant, who is obliged by *prescription* to repair. And, by analogy, an agreement between the tenants, making a division of the fence, each one mutually undertaking to repair his part, would not authorise one tenant, who had made or repaired the fence of the other, on his refusal, to recover of him the expense. But there appears to be no good reason, after an actual division by such agreement, if the cattle of one tenant escape into the close of the other tenant, through the defect of the fence, which the other had agreed to make and repair, why the owner of the cattle might not aver, that the party com-

*Curia.* The Justice erred in permitting the witness to state his *belief*, after he had sworn *that there was nothing in the conversation, from which he could say that the plaintiff referred to the time of the sale.*

Judgment reversed. (a)

(a) When a witness may give his opinion, vid. 1 *Phil. Ev.* 226, and the cases there cited. The 2 *Am. ed.* p. 209, contains the cases more fully. In *Snell et al.* v. *Moses et al.* (1 *John. Rep.* 96,) a witness was allowed by *Livingston, J.* at *nisi prius*, to give his impression as to the substance of a conversation.

plaining had bound himself by his agreement, to make and maintain the fence, and that the cattle escaped through his default; for if he had agreed to make and repair the fence, he ought, by law, to fulfil his agreement. Prescription to fence, is allowed at the common law, as resulting from an original grant or agreement, the evidence of which is lost by the lapse of time; and it is reasonable that the agreement produced, should be as effectual as a presumption, that it once existed, but is lost, arising from ancient usage." (6 *Mass. Rep.* 96, 7.) And it has been determined in this state, that where the party has, for several years, kept up a certain part of the division fence as his own, this is, *prima facie*, enough to shew that it belongs to him. (15 *John.* 220, 1.)

3. Prescription may form another exception to the common law. The country has now been settled long enough to allow of the time necessary to prove a prescription, (vid. 2 *John. Rep.* 357;) and ancient assignments of fence viewers, made under the late colonial laws, and also ancient agreements made by the parties, may have once existed, and be now lost by the lapse of time. (6 *Mass. Rep.* 97.)

It seems, then, that the owner of the cattle may aver, 1. That the party complaining, ought, by law, to make and maintain his fence, in which case he may prove the assignment or apportionment by the fence viewers; or, 2. That he is bound by agreement, to make and repair the fence, setting out the agreement in pleading, and proving it accordingly; or, 3. That he was bound by prescription, when he should regularly plead the prescription, and may prove it by ancient usage. (*Id.* 97, and vid. *The opinion of Popham, J.* in *Nowell* v. *Smith*, against the other Judges, *Cro. Eliz.* 709.)

These statutory provisions oblige a tenant to fence against such cattle *only* as are rightfully on the adjoining land. Beyond this, all rights remain as at common law; at which, says Ch. Justice *Parsons*, " when a man was obliged by prescription to fence his close, he was not obliged to fence against