## WOLCOTT, JOHNSON & CO. v. LEWIS D. MOUNT.

1. A statement in a contract of sale, descriptive of the thing sold, if intended to be part of the contract, is a condition, on the failure of which the purchaser may repudiate, or, if a rescission has become impossible,. it may be treated as a warranty, for the breach of which damages may be recovered.

2. It is a question of fact, to be determined from all the circumstances of the case, whether a representation, descriptive of the articles sold by a name by which it is known in the market, is an expression of judgment or opinion only, or was intended as a warranty.

3. Loss of profits may be recovered as damages for the non-performance of a contract, if the loss results directly from the breach of the contract itself, or is such as might reasonably be supposed to have been in the contemplation of both parties at the time of the making of the contract, as the result of non-performance ; provided that the profits to be compensated for are such as are capable of being ascertained by the rules of evidence, to a reasonable degree of certainty.

4. The measure of damages in actions on contract considered.

5. M., a market gardener, applied to W. & Co., merchants, who kept agricultural seeds for sale, for " early strap-leafed red-top turnip seed." W. showed him the seed which he said was that kind, and sold it to him as such. M. informed W., at the time of the purchase, that he wanted that kind of seed to raise a crop for the early market. M. sowed the seed, and it turned out to have been another kind of turnip seed, of an inferior quality. The representation was made in good faith, W. & Co. having purchased the seed as early strap-leafed red-top turnip seed. In an action for breach of warranty—*Held on certiorari,*

1. That the question whether the statements were merely an expression of opinion or a warranty, was one of fact in the court below, and the evidence tending to show that a warranty was made, the finding could not be reviewed.

2. That the measure of damage was the difference between the market value of the crop raised and the same crop from the seed ordered.

On *certiorari* to the Monmouth Pleas, on the trial of an appeal from the judgment of a justice of the peace.

The cause was argued in this court on the following statement of the case:

On the trial of the appeal, Mount, the appellee and plaintiff before the justice, proved that Wolcott, Johnson & Co. were merchants, keeping a store of general merchandise, in the county of Monmouth, and that, among other articles, they advertised and kept agricultural seeds for sale, and sold seeds. Mount went to their store and asked one of the partners, Bloomfield Wolcott, for early strap-leaf red-top turnip seed, and Wolcott showed him, and sold to him, seed which Wolcott told him was early strap-leaf red-top turnip seed, and sold it to Mount (two pounds) as such, and Mount paid him          cents for the same. Mount sowed the same on          acres of his ground, which he had prepared with care and great expense for the purpose. Mount had been in the habit, year after year, to sow early strap-leaf red-top turnip seed, to produce turnips for the early New York market, such kind and description of turnips yielding a large profit, and he, at time of purchase, stated that he wished this description and kind of seed for that purpose.

The seed sold to Mount by Wolcott was sown upon the ground prepared for same by Mount, and the turnips produced therefrom were not early strap-leaf red-top turnips, but turnips of a different kind and description, to wit, Russia, late, and not salable in market, and only fit for cattle, and he lost his entire crop. The plaintiff proved that the seed sold him by Wolcott was not early strap-leaf red-top turnip seed, but seed of a different kind and description, to wit, Russia turnip seed, and that it produced no profit to him, and that early strap-leaf red-top turnip seed on same ground in other years had produced large profits to Mount, and on adjoining ground, prepared in same way, the same year, had produced great profits to the owner, and that Mount was damaged thereby.

It is agreed that Wolcott did not know that the seed he sold Mount was not early strap-leaf red-top turnip seed, and that he did not sell the seed to him fraudently, the said Wolcott having purchased the seed for early strap-leaf red-top turnip seed. It is also agreed that this kind of turnip seed

cannot be known and distinguished, by the examination through sight or touch, from Russia or other kinds, but only by the kind of turnips it produces after sowing, can it be known.

The Court of Common Pleas gave judgment for the plaintiff below for $99.12 damages.

Argued at February Term, 1873, before Justices Bedle, Dalrimple and Depue.

For the plaintiff in *certiorari*, *H. G. Clayton*.

For the defendant, *B. Gummere*.

The opinion of the court was delivered by

Depue, J.   The action in this case was brought on a contract of warranty and resulted in a judgment against the defendants in the action for damages.

Two exceptions to the proceedings are presented by the brief submitted.   The first touches the right of the plaintiff to recover at all.   The second the measure of damages.

In the absence of fraud or a warranty of the quality of an article, the maxim, *caveat emptor*, applies.   As a general rule, no warranty of the goodness of an article will be implied on a contract of sale.

It has been held by the courts of New York, that no warranty whatever would arise from a description of the article sold.   *Seixas* v. *Woods*, 2 *Caines* 48; *Snell* v. *Moses*, 1 *Johns.* 96; *Sweet* v. *Colgate*, 20 *Johns.* 196.   In these cases the defect was not in the quality, but the article delivered was not of the species described in the contract of sale.

In the well known case of *Chandelor* v. *Lopus*, *Cro. Jac.* 4, it was decided that a bare affirmation that a stone sold was a bezoar stone, when it was not, was no cause of action.

The cases cited fairly present the negative of the proposition on which the plaintiff's right of action depends.   Chandelor *v.* Lopus was decided on the distinction between actions on the case *in tort* for a misrepresentation, in which a *scienter*

must be averred and proved and actions upon the contract of warranty. 1 *Smith's Lead. Cas.* 283. Chancellor Kent, who delivered the opinion in Seixas *v.* Woods, in his Commentaries, expresses a doubt whether the maxim, *caveat emptor*, was correctly applied in that case, inasmuch as there was a description in writing of the article sold, from which a warranty might have been inferred. 2 *Kent* 479. And in a recent case before the Commission of Appeals of New York, Earl, C., declared that Seixas *v.* Woods had been much questioned and could no longer be regarded as authority on the precise point. *Hawkins* v. *Pemberton*, 51 *N. Y.* 204. In the later English cases some criticism has been made upon the application of the term warranty to representations in contracts of sale, descriptive of articles which are known in the market by such description, per Lord Abinger in *Chanter* v. *Hopkins*, 4 *M. & W.* 404; per Erle, C. J., in *Bannerman* v. *White*, 10 *C. B.* (*N. S.*) 844. But in a number of instances it has been held that statements descriptive of the subject matter, if intended as a substantive part of the contract, will be regarded in the first instance as conditions, on the failure of which the other party may repudiate in toto, by a refusal to accept or a return of the article, if that be practicable, or if part of the consideration has been received, and rescission therefor has become impossible, such representations change their character as conditions and become warranties, for the breach of which an action will lie to recover damages. The rule of law is thus stated by Williams, J., in *Behn* v. *Burness*, as established on principle and sustained by authority, 3 *B. & S.* 755.

In *Bridge* v. *Wain*, 1 *Starkie* 504, no special warranty was proved, but the goods were described as scarlet cuttings, an article known in the market as peculiar to the China trade. In an action for breach of warranty, Lord Ellenborough held that if the goods were sold by the name of scarlet cuttings, and were so described in the invoice, an undertaking that they were such must be inferred. In *Allan* v. *Lake*, 18 *Q. B.* 560, the defendant sold to the plaintiff a crop of

turnips, described in the sold note as Skirving's Sweedes. The seed having been sown, it turned out that the greater part was not of that kind, but of an inferior kind. It was held that the statement that the seeds were Skirving's Sweedes, was a description of a known article of trade and a warranty. In *Josling* v. *Kingsford*, 13 *C. B.* (*N. S.*) 447, the purchaser recovered damages upon a contract for the sale of oxalic acid, where the jury found that the article delivered did not, in a commercial sense, come properly within the description of oxalic acid, though the vendor was not the manufacturer, and the vendee had an opportunity of inspection, (the defect not being discoverable by inspection,) and no fraud was suggested. In *Wieler* v. *Schillizzi*, 17 *C. B.* 619, the sale was of "Calcutta linseed." The goods had been delivered, and the action was in form on the warranty implied from the description. The jury having found that the article delivered had lost its distinctive character as Calcutta linseed, by reason of the admixture of a foreign substance, the plaintiff recovered his damages upon the warranty.

The doctrine that on the sale of a chattel as being of a particular kind or description, a contract is implied that the article sold is of that kind or description, is also sustained by the following English cases : *Powell* v. *Horton*, 2 · *Bing. N. S.* 668 ; *Barr* v. *Gibson*, 3 *M. & W.* 390 ; *Chanter* v. *Hopkins*, 4 *M. & W.* 399 ; *Nichol* v. *Godts*, 10 *Exch.* 191 ; *Gompertz* v. *Bartlett*, 2 *E. & B.* 849 ; *Azemar* v. *Casella*, *Law Rep.*, 2 *C. P.* 431, 677 ; and has been approved by some decisions in the courts of this country. *Henshaw* v. *Robins*, 9 *Metc.* 83 ; *Borrekins* v. *Bevan*, 3 *Rawle* 23 ; *Osgood* v. *Lewis*, 2 *Harr. & Gill* 495 ; *Hawkins* v. *Pemberton*, 51 *N. Y.* 198.

The right to repudiate the purchase for the non-conformity of the article delivered, to the description under which it was sold, is universally conceded. That right is founded on the engagement of the vendor, by such description, that the article delivered shall correspond with the description. The obligation rests upon the contract. Substantially, the de-

scription is warranted. It will comport with sound legal principles to treat such engagements as conditions in order to afford the purchaser a more enlarged remedy, by rescission, than he would have on a simple warranty; but when his situation has been changed, and the remedy, by repudiation, has become impossible, no reason supported by principle can be adduced, why he should not have upon his contract such redress as is practicable under the circumstances. In that situation of affairs, the only available means of redress is by an action for damages. Whether the action shall be technically considered an action on a warranty, or an action for the non-performance of a contract, is entirely immaterial.

The contract which arises from the description of an article on a sale by a dealer not being the manufacturer, is not in all respects co-extensive with that which is sometimes implied, where the vendor is the manufacturer, and the goods are ordered by a particular description, or for a specified purpose, without opportunity for inspection, in which case, a warranty, under some circumstances, is implied that the goods shall be merchantable, or reasonably fit for the purpose for which they were ordered. In general, the only contract which arises on the sale of an article by a description, by its known designation in the market, is that it is of the kind specified. If the article corresponds with that description, no warranty is implied that it shall answer the particular purpose in view of which the purchase was made. *Chanter* v. *Hopkins*, 4 *M. & W.* 414; *Ollivant* v. *Bayley*, 5 *Q. B.* 288; *Windsor* v. *Lombard*, 18 *Pick.* 55; *Mixer* v. *Coburn*, 11 *Metc.* 559; *Gossler* v. *Eagle, &c., Co.*, 103 *Mass.* 331. The cases on this subject, so productive of judicial discussion, are classified by Justice Mellor, in *Jones* v. *Just*, *Law Rep.*, 3 *Q. B.* 197. Nor can any distinction be maintained between statements of this character in written and in oral contracts. The arguments founded on an apprehension that where the contract is oral, loose expressions of judgment or opinion pending the negotiations, might be regarded as embodied in the contract, contrary to the intentions of parties, is without

reasonable foundation. It is always a question of construction or of fact, whether such statements were the expression of a mere matter of opinion, or were intended to be a substantive part of the contract, when concluded. If the contract is in writing, the question is one of construction for the court. *Behn* v. *Burmiss*, 3 *B. & S.* 751. If it be concluded by parol, it will be for the determination of the jury, from the nature of the sale, and the circumstances of each particular case, whether the language used was an expression of opinion, merely, leaving the buyer to exercise his own judgment, or whether it was intended and understood to be an undertaking which was a contract on the part of the seller. *Lomi* v. *Tucker*, 4 *C. & P.* 15 ; *De Sewhanberg* v. *Buchanan*, 5 *C. & P.* 343 ; *Power* v. *Barham*, 4 *A. & E.* 473. In the case last cited, the vendor sold by a bill of parcels, " four pictures, views in Venice—Canaletto ;" it was held that it was for the jury to say, under all the circumstances, what was the effect of the words, and whether they implied a warranty of genuineness, or conveyed only a description or an expression of opinion, and that the bill of parcels was properly laid before the jury with the rest of the evidence.

The purchaser may contract for a specific article, as well as for a particular quality, and if the seller makes such a contract, he is bound by it. The state of the case presented shows that the plaintiff inquired for seed of a designated kind, and informed the defendants that he wanted it to raise a crop for the New York market. The defendants showed him the seed, and told him it was the kind he inquired for, and sold it to him as such. The inspection and examination of the seed were of no service to the plaintiff. The facts and circumstances attending the transaction were before the court below, and from the evidence, it decided that the proof was sufficient to establish a contract of warranty. The evidence tended to support that conclusion, and this court cannot, on *certiorari*, review the finding of the court below, on a question of fact, where there is evidence from which the conclusion arrived at may be lawfully inferred.

The second reason for reversal is, that the court was in error in the damages awarded. The judgment was for consequential damages.

The contention of the defendants' counsel was, that the damages recoverable should have been limited to the price paid for the seed, and that all damages beyond a restitution of the consideration, were too speculative and remote to come within the rules for measuring damages. As the market price of the seed which the plaintiff got, and had the benefit of in a crop, though of an inferior quality, was probably the same as the market price of the seed ordered, the defendants' rule of damages would leave the plaintiff remediless.

The earlier cases, both in English and American courts, generally concurred in excluding, as well in actions in tort as in actions on contracts, from the damages recoverable, profits which might have been realized if the injury had not been done, or the contract had been performed. *Sedg. on Dam.* 69.

This abridgment of the power of courts to award compensation adequate to the injury suffered, has been removed in actions of tort. The wrong doer must answer in damages for those results injurious to other parties, which are presumed to have been within his contemplation when the wrong was done. *Binninger* v. *Crater,* 4 *Vroom* 513. Thus, in an action to recover damages for personal injuries caused by the negligence of the defendant, the plaintiff was held to be entitled to recover as damages the loss he sustained in his profession as an architect, by reason of his being incapacitated from pursuing his business. *New Jersey. Express Co.* v. *Nichols,* 4 *Vroom* 435.

A similar relaxation of this restrictive rule has been made at least to a qualified extent, in action on contracts, and loss of profits resulting naturally from the breach of the contract, has been allowed to enter into the damages recoverable where the profits that might have been realized from the performance of the contract, are capable of being estimated with a

reasonable degree of certainty. In an action on a warranty of goods adapted to the China market, and purchased with a view to that trade, the purchaser was allowed damages with reference to their value in China, as representing the benefit he would have received from the contract, if the defendant had performed it. *Bridge* v. *Wain*, 1 *Starkie* 504. On an executory contract put an end to by the refusal of the one party to complete it, for such breach the other party may recover such profits as would have accrued to him as the direct and immediate result of the performance of the contract. *Fox* v. *Harding*, 7 *Cush.* 516; *Masterton* v. *Mayor of Brooklyn*, 7 *Hill* 61. In an action against the charterer of a vessel for not loading a cargo, the freight she would have earned under the charter party, less expenses and the freight actually received for services during the period over which the charter extended, was held to be the proper measure of damages. *Smith* v. *McGuire*, 3 *H. & N.* 554.

In the cases of the class from which these citations have been made, and they are quite numerous, the damages arising from loss of profits were such as resulted directly from nonperformance, and in the ordinary course of business, would be expected as a necessary consequence of the breach of the contract. In the two cases cited of Fox *v.* Harding, and Masterton *v.* Mayor of Brooklyn, it was said that the profits that might have been realized from independent and collateral engagements, entered into on the faith of the principal contract, were too remote to be taken into consideration. This latter qualification would exclude compensation for the loss of the profits of a resale by the vendee of the goods purchased, made upon the faith of his expectation, that his contract with his vendor would be performed.

In the much canvassed case of *Hadley* v. *Baxendale*, 9 *Exch.* 341, Alderson, B., in pronouncing the judgment of the court, enunciated certain principles on which damages should be awarded for breaches of contracts which assimilated damages in actions on contract to actions *in tort*. The rule there adopted as resting on the foundation of correct legal princi-

ples was, that the damages recoverable for a breach of contract, were either such as might be considered as arising naturally, *i. e.*, according to the usual course of things, from the breach of the contract itself; or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable results of the breach of it; and that when the contract is made under special circumstances, if those special circumstances are communicated, the amount of injury which would ordinarily follow from a breach of the contract, under such circumstances, may be recovered as damages that would reasonably be expected to result from such breach. The latter branch of this rule was considered by Blackburn, J., and Martin, B., as analogous to an agreement to bear the loss resulting from the exceptional state of things, made part of the principal contract, by the fact that such special circumstances were communicated, with reference to which the parties may be said to have contracted. *Horne* v. *The Midland Railway Company, Law Rep.*, 8 *C. P.* 134–140. Under the operation of this rule, damages arising from the loss of a profitable sale, or the deprivation for a contemplated use, have been allowed when special circumstances of such sale or proposed use were communicated contemporaneously with the making of the contract; and have been denied when such communication was not made so specially, as that the other party was made aware of the consequences that would follow from his non-performance. *Borries* v. *Hutchinson*, 18 *C. B.* (*N. S.*) 445; *Cory* v. *Thames Ironworks Co*, *Law Rep.*, 3 *Q. B.* 181; *Horne* v. *The Midland Railway Co.*, *L. R.*, 8 *C. P.* 134; *Benjamin on Sales* 665–671.

It must not be supposed that under the principle of Hadley *v.* Baxendale mere speculative profits, such as might be conjectured to have been the probable results of an adventure which was defeated by the breach of the contract sued on, the gains from which are entirely conjectural, with respect to which no means exist of ascertaining, even approximately, the probable results, can, under any circumstances, be brought

within the range of damages recoverable. The cardinal principle in relation to the damages to be compensated for on the breach of a contract, that the plaintiff must establish the quantum of his loss, by evidence from which the jury will be able to estimate the extent of his injury, will exclude all such elements of injury as are incapable of being ascertained by the usual rules of evidence to a reasonable degree of certainty.

For instance, profits expected to be made from a whaling voyage, the gains from which depend in a great measure upon chance, are too purely conjectural to be capable of entering into compensation for the non-performance of a contract, by reason of which the adventure was defeated. For a similar reason, the loss of the value of a crop for which the seed had not been sown, the yield from which, if planted, would depend upon the contingencies of weather and season, would be excluded as incapable of estimation, with that degree of certainty which the law exacts in the proof of damages. But if the vessel is under charter, or engaged in a trade, the earnings of which can be ascertained by reference to the usual schedule of freights in the market, or if a crop has been sowed on the ground prepared for cultivation, and the plaintiff's complaint is, that because of the inferior quality of the seed a crop of less value is produced, by these circumstances the means would be furnished to enable the jury to make a proper estimation of the injury resulting from the loss of profits of this character.

In this case the defendants had express notice of the intended use of the seed. Indeed, the fact of the sale of seeds by a dealer keeping them for sale for gardening purposes, to a purchaser engaged in that business, would of itself imply knowledge of the use which was intended, sufficient to amount to notice. The ground was prepared and sowed, and a crop produced. The uncertainty of the quantity of the crop, dependent upon the condition of weather and season, was removed by the yield of the ground under the precise circumstances to which the seed ordered would have been exposed.

The difference between the market value of the crop raised, and the same crop from the seed ordered, would be the correct criterion of the extent of the loss. Compensation on that basis may be recovered in damages for the injury sustained as the natural consequence of the breach of the contract. *Randall* v. *Raper*, *E., B. & E.* 84; *Lovegrove* v. *Fisher*, 2 *F. & F.* 128.

From the state of the case, it must be presumed that the court below adopted this rule as the measure of damages, and the judgment should be affirmed.

Judgment affirmed, 9 *Vr.* 496.
CITED in *McAndrews* v. *Tippet*, 10 *Vr.* 105; *Appleby* v. *State*, 16 *Vr.* 161.