(118 App. Div. 652)

### PEOPLE v. MINGEY.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

1. FORGERY—UTTERING—ELEMENTS OF OFFENSE.

One who, knowing that the name of the payee of a check appearing on the back thereof had been forged, deposited the same in his bank for collection and had the proceeds credited to his private account, is guilty of forgery in the second degree, under Pen. Code, §§ 511, 520, 521, declaring that a person who utters a forged instrument by which an obligation has been transferred, etc., shall be guilty of forgery in the second degree, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, §§ 51, 52.]

2. CRIMINAL LAW—INSTRUCTIONS—EFFECT OF EVIDENCE—UNCONTESTED QUESTIONS.

Where, on a trial for uttering a check bearing a forged indorsement, the undisputed facts established the elements of the offense, except whether accused knew that the indorsement was forged and whether he uttered it with intent to defraud, and the court submitted that matter to the jury, a charge that there was much in the evidence establishing some of the essential facts necessary to be proved was not erroneous.

3. FORGERY—INTENT TO DEFRAUD—QUESTION FOR JURY.

On a trial for uttering a check bearing a forged indorsement, it appeared that a debtor gave a check in payment of his debt to his creditor, that a third person without authority indorsed the creditor's name on the back of the check, and that accused with knowledge of the facts indorsed his name and deposited the check in a bank for collection and directed that the proceeds should be credited to his private account. *Held*, that a finding that he uttered the check with intent to defraud was authorized, though he intended to apply the proceeds on an alleged claim against the payee of the check.

4. SAME.

One authorized by a creditor to collect a debt has no authority, on receiving from the debtor in payment a check payable to the creditor, to indorse the creditor's name, and a person taking the check with knowledge of such indorsement, with intent to obtain money thereon based on the indorsement, and who does obtain money thereon, is guilty of uttering a forged check.

Appeal from Court of General Sessions, New York County.

Lawrence P. Mingey was convicted of uttering a forged check, and he appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George M. Curtis, for appellant.
Robert S. Johnstone, for respondent.

INGRAHAM, J. On or about March 30, 1904, one E. M. Devine delivered to the Ross Lumber Company, a copartnership doing business under that name, a check for $215, payable to its order. That check was never indorsed by or with the authority of such copartnership. Subsequently and on the day of its date there was written on the back of this check the words, "Ross Lumber Co., L. P. Mingey, Attorney," and the check was deposited by the defendant in the Merchants' Trust Company, where he had an account, to his credit. It was testified by the witnesses for the people that this check was obtained on the day it bore date by one Whitcomb from E. M. Devine in payment of what was claimed to be an indebtedness from Devine to the Ross Lumber

Company. Whitcomb delivered this check to one Menton, at which time it was not indorsed. Menton wrote the words, "Ross Lumber Co.," and tried to get it cashed by the bank on which it was drawn, but, being unsuccessful, went to the defendant's office in Fifty-Fourth street, in the city of New York. When defendant came in, Menton said, "I made that collection," and the defendant said, "What collection?" Menton replied, "For the Ross Lumber Company from Devine." The defendant then said, "Tell us how you done it," to which Menton replied, "The way we planned," or "The way we suggested; I have got the check." The defendant said, "Let us see it," when Menton handed it over to the defendant. The defendant took the check in his hand and said: "It is indorsed. Who indorsed it?" to which Menton replied, "I did." The defendant then said to Menton, "You took an awful chance," to which Menton replied, "I do not see how I did. * * * Supposing we call a meeting of the board of directors and get Mr. Devine to bring down his books and bills to this office, and while they are down here what is to hinder me from taking out, this bill (meaning a bill which he had brought up as a receipt for the check) and the check, which no doubt will be attached to it, and substitute some other one, which I will get from the Ross Lumber Company." To that the defendant replied, "That is up to you." The defendant then went to his desk, wrote something on the back of the check, and handed it to a man in the office, whom he told to put it through the bank. This man then took his hat and left the place. Menton did not say that he had authority from the Ross Lumber Company to indorse this check. Subsequently the check was deposited to defendant's credit, was paid by the bank upon which it was drawn, and the amount was credited to the defendant in the bank in which it was deposited. Upon this evidence the people rested.

The defendant was then called in his own behalf and testified that he was an attorney at law, admitted in 1888; that he had been counsel for Devine, the drawer of this check, and that he knew Mr. Ross, of the Ross Lumber Company, who had also been his client; that after he received this check to the order of the Ross Lumber Company he had a conversation with Ross over the telephone; that the defendant told Ross that Menton had brought the check to him and had stated that he had received authority from Ross to collect it and apply the amount of it on the amount that the Ross Lumber Company owed the Menton Company; that Ross told the defendant it was all right, to have Menton mention it, and in a couple of days he would give Menton a receipted bill for the item; that from March 30, 1904, to December, 1905, he met Ross several times, but nothing was said as to there being anything wrong in regard to this check. Defendant also testified that on the same day he had a conversation over the telephone with Devine about the check; that he told Devine that Menton had brought the check to him; and that Menton had an arrangement with Ross by which he was to collect the amount from Devine and apply it to the amount the Ross Lumber Company owed the Menton Company, to which Devine said, "Oh, it is all right then." The defendant further testified that he was secretary and treasurer of the Menton Company, of which Devine was president and Menton vice president; that after

these conversations with Ross and Devine he indorsed the check and sent it to be deposited in his bank to his credit; that as treasurer he kept the moneys of the Menton Company in this bank account; that he applied the amount realized from the check in payment of the Menton Company's debts.   The defendant's testimony was not corroborated, and in rebuttal both Ross and Devine testified that they had no conversation over the telephone with the defendant in relation to this check. Devine testified that he first knew that the Ross Lumber Company's indorsement had been forged some seven or eight months after the check had been given; that Whitcomb came to him, claiming to represent the Ross Lumber Company, and, believing his statements, Devine delivered the check to him for the Ross Lumber Company.

Section 521 of the Penal Code provides that:

"A person who, knowing the same to be forged or altered, and with intent to defraud, utters, offers, disposes of or put off as true * * * a forged * * * instrument.or writing, or other thing, the false making, forging or altering of which is punishable as forgery; is guilty of forgery in the same degree as if he had forged the same."

By section 511 of the Penal Code it is provided that a person is guilty of forgery in the second degree who, with intent to defraud, forges—

"An instrument or writing, being or purporting to be the act of another, by which a pecuniary demand or obligation is or purports to be or to have been created, increased, discharged or diminished, or in any manner affected, or by which any rights or property whatever are or purport to be or to have been created, transferred, conveyed, discharged, increased or diminished, or in any manner affected."

And by section 520 of the Penal Code it is provided that the expression "forge" includes the—

"False making or counterfeiting of the signature of a party or witness, and the placing or connecting together, with intent to defraud, different parts of several genuine instruments."

If the defendant, knowing that the name of the Ross Lumber Company had been forged on the back of this check, deposited the same in his bank for collection, the proceeds to be credited to his private bank account, he was guilty within these provisions of the Penal Code of forgery in the second degree.   The testimony seems to be substantially uncontradicted that the name of the Ross Lumber Company was indorsed on the back of this check by a person other than one connected with the copartnership doing business under that name, and without authority to make the indorsement; that the defendant wrote his name upon this forged indorsement, deposited the check to his credit, collected the proceeds, and applied such proceeds in such manner as he desired.   Two of the elements, therefore, of uttering a forged instrument, are substantially undisputed.   The remaining questions were whether the defendant knew that the indorsement upon the check was forged, and whether he uttered the same with intent to defraud.   These questions were for the jury.

The learned trial court, in a very careful charge, explained to the jury their duty, expressly instructing them that they were the sole judges of the facts, and that it was the intention of the court to say nothing that should influence them in the least as to what the facts

were. The jury were then carefully instructed as to what the people were bound to prove to justify a conviction, and the charge was certainly as favorable to the defendant as he was entitled to.

The defendant complains of the observation of the trial judge that there was much in the evidence "which establishes beyond all cavil some of the essential facts necessary to be proved." But that was a correct statement, as the fact that Menton actually wrote the name of the payee on the back of the check, and that subsequent to that time the check was delivered to the defendant, and that he indorsed and deposited it in his bank for collection, were conceded by the defendant himself. And the learned trial judge subsequently in his charge stated to the jury the questions which were in dispute, and quite correctly instructed them as to their duty in relation to the disputed question of fact. There was no exception taken to this charge, except "in reference to the doctrine and principle of uttering, and also in reference to the definition of forgery in the first and second degree." But the charge was clearly correct in those particulars. The court acquiesced in every request of the defendant to charge, except one, which was substantially a request to instruct the jury to acquit, and which was properly refused.

The learned counsel for the appellant strenuously contends that nobody was defrauded, and, consequently, that there was no intention to defraud. But that was clearly a question for the jury. If this check was obtained from the maker in payment of a debt due to the Ross Lumber Company, and that company never authorized any one to indorse or obtain the money upon it, and the defendant, knowing this fact, collected the money on the check, the indorsement upon which had been forged, he uttered the check with intent to defraud, even though he intended to apply the proceeds upon the alleged claim against the Ross Lumber Company. The maker of the check owed the Ross Lumber Company for lumber. He could only satisfy that indebtedness by paying the Ross Lumber Company. That he purported to do by giving a check to the order of that company; and to collect that money from Devine by forging the indorsement of the Ross Lumber Company defrauded Devine or Devine's bank of the money, for the transaction was not a payment of the indebtedness due the Ross Lumber Company, and did not discharge such indebtedness unless the Ross Lumber Company indorsed the check. The fact that either Devine or the bank upon which the check was drawn was defrauded by the forged instrument cannot be disputed.

The learned counsel for the defendant also insists that the defendant did not have a fair trial. This seems to be based upon the fact that the court repeatedly during the trial interrupted by asking questions of the witnesses and insisting upon the district attorney's conducting the prosecution according to the court's idea of the order of proof and the questions which should be asked. We have read over this record with care, and while it is true that in a number of instances the court interposed by asking questions, and interrupted the course of the trial by suggestions as to the proper method of procedure by the district attorney, there is nothing in the record which suggests that all of the rights secured to the defendant were not fully preserved and

protected. Counsel for the defendant cross-examined at great length, and he was not interfered with in presenting his defense or in cross-examining the witnesses produced by the prosecution. A large portion of the case is taken up with conversations between the court and counsel for the defendant, but I can find nothing that the court said or did which could have prejudiced the defendant. It is difficult to see how the jury could have come to any other conclusion, and upon the defendant's own testimony he is guilty of uttering this forged check. He knew that the check had been given by Devine to pay Devine's debt to the Ross Lumber Company; he knew that the check had been obtained by Whitcomb or Menton from Devine, and had not been delivered to the Ross Lumber Company; he knew that the name of the Ross Lumber Company on the back of the check had not been written by that company; nor does he pretend that he ever asked the Ross Lumber Company if they had authorized Menton or anybody else to indorse their name upon this check. The defendant was a lawyer, and certainly chargeable with knowledge of the general rules in relation to forgery, and that the payment of this check would not be a payment of Devine's debt to the Ross Lumber Company, unless the Ross Lumber Company either indorsed or authorized the indorsement of the check. Assuming that he asked whether the Ross Lumber Company had authorized Menton to collect the money from Devine, such an authority would not justify the assumption that the Ross Lumber Company had authorized Menton to indorse a check given by Devine to it in payment of his indebtedness. The defendant must have intended to obtain the money upon this check based upon a forged indorsement, and he must have known that the payment of the check by the bank upon that forged indorsement was an unauthorized payment by the bank, which would neither protect the bank against its depositor nor the depositor as against the Ross Lumber Company on the drawer's indebtedness to it.

There are many exceptions to evidence upon this record, but none of them are entitled to consideration. Page after page of the case on appeal consists of disputes between the counsel for the defendant and the court, and the arguments of defendant's counsel on questions of evidence, which can have no possible relation to any question presented on appeal. We wish again to express our disapproval of this practice. The insertion of this matter in the case can be of no possible benefit to the defendant and adds much to the difficulty of ascertaining what facts were proved.

We think, from the whole case, that the defendant had a fair trial and was clearly guilty, and that the judgment should be affirmed. All concur.