(57 Misc. Rep. 574.)

## PEOPLE v. ACRITELLI.

(Court of General Sessions, New York County. January, 1908.)

1. GRAND JURY—PRESENCE OF DEPUTY ATTORNEY GENERAL—EFFECT.

The presence of the deputy attorney general in the grand jury room
while evidence is being received as to an alleged offense arising under the
election law, brought to the attention of the grand jury by the Attorney
General acting under the direction of the Governor, does not violate any
constitutional right of a defendant against whom an indictment is found,
or form a ground for dismissal of the indictment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, § 73.]

2. SAME—CONSIDERATION OF OFFENSES OF SAME GENERAL CLASS.

Charges for the commission of several offenses of the same general
class, under investigation by the grand jury, may be considered at the
same time without that formal separation which would entail delay in
consequence of a necessity for the repetition of evidence.

3. SAME—ATTENDANCE AND EXAMINATION OF ACCUSED.

Where defendant practically came before the grand jury investigating
charges against him responsive to a permission sought for by him, and
thereupon stated that his sole purpose was to submit to the grand jury
an anonymous letter which he had received, and which he thereupon submitted, which letter contained nothing bearing on the offenses with which
he stood charged, and he was not interrogated respecting those offenses
and said nothing regarding them, indictments thereafter found by the
grand jury were not vitiated because of any alleged violation of defendant's constitutional rights springing from the circumstance of his attendance before the grand jury and what he then said.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, § 74.]

**4. INDICTMENT—SUFFICIENCY OF EVIDENCE TO SUPPORT.**

An indictment will be set aside, where the evidence before the grand jury was insufficient to warrant the finding of it, and such insufficiency is shown by competent proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 483.]

**5. CRIMINAL LAW—EVIDENCE—TESTIMONY OF ACCOMPLICES—CORROBORATION.**

On a charge of knowingly aiding, assisting, and abetting an act of illegal registration for the purpose of voting, the person who conceived the purpose of committing the crime of illegally registering and suggested to defendant the crime of aiding, assisting, and abetting him to carry out such purpose, is to be deemed an accomplice of defendant as to the crime charged against him, on whose testimony defendant cannot be convicted unless corroborated by such other evidence as tends to connect him with the crime.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1082–1098, 1124–1126.]

**6. SAME—SUFFICIENCY.**

Evidence corroborative of an accomplice is not required of itself to be sufficient to show the commission of the crime, nor is it required that the whole case should be proved outside of the evidence of the accomplice, nor that the corroborative evidence should be wholly inconsistent with defendant's innocence; but it is sufficient if it tends to connect defendant with the commission of the crime, and comes from an independent source, and goes to some material facts tending to show the commission of the crime, and that defendant was implicated in it, and consists of something more than suspicious circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1128.]

**7. INDICTMENT—SUFFICIENCY OF EVIDENCE TO SUPPORT.**

An indictment, found solely on the testimony of one who was an accomplice, and some of whose statements the grand jury did not believe, and which if they were not true must have been known by the witness to have been false, is unwarranted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 483.]

**8. ELECTIONS—VIOLATION OF ELECTION LAWS.**

Where, on investigation by the grand jury of a charge of knowingly aiding, assisting, and abetting an act of illegal registration for the purpose of voting, there was no competent evidence that defendant knew that the person charged to have illegally registered proposed to register from his house in which defendant at his request had promised him a room, or that defendant knowingly aided, assisted, or abetted him in so registering, the indictment should be dismissed, since to establish that charge proof is required that defendant knew that the person charged to have illegally registered would not be a qualified voter at the election following his registration, that such person was aware of his own disqualification, and defendant knew that such person, though aware of his general disqualification or disqualification for registry at a particular place, proposed to register at such place, that defendant with such knowledge purposely intended to do something to aid, assist, or abet him in registering, and that the thing which he did in fact aided, assisted, or abetted him in registering.

**9. INDICTMENT—SUFFICIENCY OF EVIDENCE TO SUPPORT.**

An indictment supported by sufficient competent evidence should not be dismissed because illegal evidence was also received, unless it clearly appears that the illegal evidence improperly influenced the grand jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 483.]

10. SAME.

An indictment supported by sufficient competent evidence will not be dismissed because the grand jury also received irrelevant and immaterial evidence, where not enough thereof, which in all probability related to other and unrelated offenses, was submitted to the court to enable it to say that such evidence was calculated to create a suspicion in the minds of the grand jurors that defendant was guilty of other violations of the law than those charged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 483.]

11. SAME.

Where, on investigation by the grand jury of a charge of knowingly aiding, assisting, and abetting an act of illegal registration for the purpose of voting, questions propounded to a witness improperly called on him to testify as to the operation of his mind, his belief, understanding, and purpose, and as to his opinion as to what was in defendant's mind, and the witness' answers alone gave color to evidence which otherwise would have been nonincriminating and which would have permitted an inference of innocence, such improper evidence was prejudicial, and, because of its reception, the indictment will be dismissed.

12. CRIMINAL LAW—EVIDENCE—ACCOMPLICE—CORROBORATION.

Code Cr. Proc. § 399, forbidding a conviction on the testimony of an accomplice unless corroborated, is applicable to the testimony of one who because of the nature of the offense is a principal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1082, 1124–1126.]

13. SAME—PARTIES TO OFFENSES—"PRINCIPALS."

All concerned in the commission of a misdemeanor are principals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 71–75.

For other definitions, see Words and Phrases, vol. 6, pp. 5552, 5557; vol. 8, p. 7763.]

14. ELECTIONS—VIOLATION OF ELECTION LAWS.

To sustain an indictment under Pen. Code, § 41d, it must appear that defendant was a dweller in a building in the city, that he gave false answers to questions asked him, that those questions were asked of him by an elector of the city in which defendant dwelt, that they were asked between the first meeting of the board of registry therein and the closing of the polls at such election, and that they related to the residence and qualifications as a voter of a person who either dwelt in such building or whose name appeared on the list of registry of voters made by a board of registry as residing at such building.

15. SAME—INDICTMENT—SUFFICIENCY OF EVIDENCE TO SUPPORT.

An indictment under Pen. Code, § 41d, making it a misdemeanor for any person dwelling in a building in a city to give false answers to questions asked by an elector of such city between the first meeting of the board of registry therein and the closing of the polls, relating to the residence and qualifications as a voter, of a person dwelling in such building, or who appears on the list of registry of voters as residing at such building, found without evidence that defendant was an elector of the city where the registration in respect to which he was questioned was made, or that he lived in such city, or that he was 21 years of age, cannot be sustained.

16. INDICTMENT—RESUBMISSION.

Where an indictment cannot be sustained as founded on insufficient evidence before the grand jury, but it is possible that the proof lacking, being in part technical, can be supplied if the matter is again resubmitted

to the grand jury, in dismissing the indictment, the court will direct that the matters therein be resubmitted to the grand jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 476.]

Two indictments against Peter P. Acritelli for crimes against the elective franchise, which indictments he moves to dismiss. Indictments dismissed, with the direction as to one that the matters therein be resubmitted to the grand jury, and as to the other without such direction.

Abraham Levy, for the motion.

John Palmieri and Benjamin Reass, Deputy Attys. Gen., opposed.

CRAIN, J. This is a motion to dismiss two indictments. The motion is made upon the following grounds: First. That a person was permitted to be present during the session of the grand jury while the charge embraced in the indictments was under consideration, other than as provided in sections 262, 263, and 264 of the Code of Criminal Procedure. Second. That the legal evidence received by the grand jury was insufficient to warrant the finding by the grand jury of either indictment. Third. That the grand jury received other than legal evidence to such an extent and in such manner as to invalidate the indictments. Fourth. That the constitutional rights of the defendant were violated in the finding of the indictments, in that they were based in part upon testimony which, it is alleged, the defendant gave under compulsion before the grand jury against himself. The motion is based upon the indictments, the motion papers used on the motion for an inspection of the minutes of the grand jury, comprising an affidavit verified by the defendant's counsel and the notice of motion, the order for the inspection of the grand jury minutes, the minutes themselves, and the motion papers on the motion to dismiss the indictments, including another affidavit by the defendant's counsel and the notice of motion. The power of the court to entertain, and under certain conditions to grant, the motion, is found in sections 313 and 671 of the Code of Criminal Procedure, and in its inherent power to entertain and grant the motion upon constitutional grounds—that is to say, upon grounds predicated upon a violation of the defendant's constitutional rights.

Section 313 of the Code of Criminal Procedure reads as follows:

"The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases, but in no other: (1) When it is not found, indorsed and presented as prescribed by sections two hundred and sixty-eight and two hundred and seventy-two; (2) when a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections two hundred and sixty-two, two hundred and sixty-three and two hundred and sixty-four."

Section 671 of the Code of Criminal Procedure is as follows:

"The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed."

The constitutional grounds upon which a motion to dismiss may be granted are stated in People v. Glen, 173 N. Y. 395, 66 N. E. 112, and People v. Sexton, 187 N. Y. 495, 80 N. E. 396, 116 Am. St. Rep. 621.

These constitutional grounds are in part recognized in and protected by the statutory provisions that: "In the investigation of a charge for the purpose of indictment the grand jury can receive no other evidence than (1) such as is given by witnesses produced and sworn before them or furnished by legal documentary evidence; or (2) the deposition of a witness, in the cases mentioned in the third subdivision of section eight." See Code Cr. Proc. § 255. That "the grand jury can receive none but legal evidence." Id. § 256. That "the grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment, would, if unexplained or uncontradicted, warrant a conviction by a trial jury." Id. § 258. And that "it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence, within their reach will explain away the charge, they should order such evidence to be produced." Id. § 257. These statutory provisions and the general constitutional rights of the defendant permit a defendant to assail by motion to dismiss an indictment which is not founded upon legal evidence, or which is not sustained by a sufficiency of evidence, or which it can be seen is found solely as the result of the reception of incompetent evidence.

The indictments which the defendant seeks to have dismissed are numbered, respectively, 62,758 and 62,759. The first charges the defendant with a misdemeanor, in that it charges him with a violation of section 41d of the Penal Code. The second charges the defendant with a felony, to wit, the crime of false registration under subdivision 5 of section 41a of the Penal Code. For brevity, the first indictment will be hereafter referred to as the misdemeanor indictment, and the second as the felony indictment.

The first ground for the granting of the motion is predicated upon the presence in the grand jury room, at the time of the reception by the grand jury of evidence, of a Deputy Attorney General; the contention being that he is not one of the persons whose presence in the grand jury room is permitted by law.

This subject was carefully considered in the case of People v. Kramer, 33 Misc. Rep. 209, 68 N. Y. Supp. 383, and Recorder Goff, then a judge of this court, reviewed the constitutional and statutory law applicable to the subject and such cases as were found to be in point. The conclusion which he reached was that the presence of the Deputy Attorney General in the grand jury room while evidence was being received in a case arising under the election law of the state was permissible; that his presence did not violate any constitutional right of the defendant; that it was distinctly provided for by the election law; and that the election law in this regard was not affected by any provision at that time contained in the Code of Criminal Procedure. That case is an authority. The reasoning in it is sound. See, also, People v. Lytle, 7 App. Div. 553, 40 N. Y. Supp. 153. The later decision (People v. Scannell, 36 Misc. Rep. 40, 72 N. Y. Supp. 449) shows that the right of a Deputy Attorney General to be present in the grand jury room does not exist independently of the nature of the case, or, in other words, is not a right which springs solely from his official position. It is a right which depends in part upon the fact that the matter under consideration by the grand jury is within the election law.

The Scannell Case is not an authority for the proposition that a Deputy Attorney General cannot appear before the grand jury in an election case. The technical proof required of the right of a Deputy Attorney General to appear in an election case is perhaps only made when it is shown that a direction was given by the Governor to the Attorney General to act in election matters or a given election matter in particular for the superintendent of elections in the metropolitan district, and that, pursuant to such direction, the Attorney General either acted personally or acted through a duly appointed deputy (Laws 1899, p. 655, c. 302, § 57), and in the Kramer Case such technical proof appears to have been made by affidavit.

In the case at bar no such technical proof was made, except perhaps in part, if an affidavit used by the Attorney General in opposition to a motion for an inspection of the minutes can be considered as a paper before the court on this motion. I have concluded to so regard it, and, because of the fact that the indictments charge violations of the election law, I have concluded to consider the case of People v. Kramer as controlling, not regarding the amendment to section 264 of the Code of Criminal Procedure, made at the last session of the Legislature, as affecting the matter. The Deputy Attorney General offered upon the argument to supply the technical proof referred to. I suggest the filing by him of an affidavit substantially the same as that filed by Deputy Attorney General Hedges in the Kramer Case. What I have said disposes of the only argument urged against the indictments predicated upon section 313 of the Code of Criminal Procedure.

It is urged that both these indictments should be dismissed for the alleged reason that the grand jury, without separating the offenses heard at one and the same time, and commingled testimony in part applicable to one exclusively and in part applicable to the other exclusively, and that orderly procedure in the grand jury room required that the evidence relating to each offense be separately heard, and that the rights of the defendant were invaded by a commingling of the evidence relating to each. I allude, at this point, to this contention because it is made respecting both indictments, and because, if cognizable by the court, it must, in my judgment, be considered, under that power conferred upon the court by section 671 of the Code of Criminal Procedure, and while some difference of opinion has arisen as to the exact scope of that section, and the decisions in this regard are somewhat in conflict, I think that the contention may be considered under that section. The contention is rarely made. So far as I have been able to ascertain, it has heretofore been made in but a single case. At least, I have found but one reported decision in which allusion is made to such a contention. That is the case of People v. Rutherford (Sup.) 62 N. Y. Supp. 224, where the opinion was rendered by Judge Kellogg. In that case there were two separate charges of forgery against the defendant. The testimony relating to each was interwoven and heard practically without separation and at the same time by the grand jury. The decision does not turn upon this point. Allusion is made to it in the opinion of the court, and that allusion shows that, in the opinion of Judge Kellogg, that practice was sanctioned by convenience and was not improper. The case in which the opinion was written decided that

the power of the court to dismiss an indictment was limited by the words of exclusion contained in section 313, and to this extent it has been overruled and is not an authority. My view of the matter is that convenience suggests, where offenses belong to the same general class,. as, for example, two charges of forgery, or two alleged violations of the election law, they be considered by the grand jury at the same time, without the necessity of that formal separation which would entail a. delay in the repetition of evidence. Where, as in the case at bar, the deliberations of the grand jury result in indictments which cover all the crimes as to which testimony has been produced before the grand jury, and the crimes are themselves of such a similar character that the grand jury cannot be said to have concluded that a defendant was guilty of one for the reason that they have found him guilty of another, no prejudice results to a defendant. A different question would arise if the grand jury, in listening to testimony against a defendant, elicited for the purpose of establishing the defendant's guilt of a particular offense, heard at the same time evidence against the same defendant bearing upon an unrelated crime, and which testimony did not result in, an indictment respecting such other crime. In this event it might perhaps be urged with force that the grand jury in finding a given indictment had been influenced by the circumstance that there was testimony before it in impeachment of the defendant's general character and indicative of his commission of another offense. This is not the situation in the case at bar, and for the reasons stated I am of opinion that this. contention cannot prevail.

The next ground of objection common to both indictments is that which is predicated upon the alleged violation of the rights of the defendant, in that, it is alleged, he was compelled to and did give testimony before the grand jury against himself. I have examined with care the minutes of the grand jury, and I reach the conclusion that the defendant appeared voluntarily before the grand jury, and that such statement as he made was voluntary, that he was properly apprised of the effect which any statement which he might make might have, and that in point of fact he gave no testimony of any character whatsoever bearing upon the charge against him contained in either indictment. The defendant practically came before the grand jury responsive to a permission sought for by him by letter, and obtained by him, and he thereupon stated that his sole purpose was to submit to the grand jury an anonymous letter which he had received, and which he thereupon submitted, and which letter contained nothing bearing upon the offenses, with which he stands charged, and he thereupon was not interrogated respecting those offenses and did not say anything regarding them. It follows that these indictments were not vitiated by reason of his having been examined, unless they are vitiated by virtue of the provisions. of section 41q of the Penal Code. An examination of that section shows that it renders one immune to indictment, in a case involving a violation of the election law, who has given testimony in such a case under compulsion. The defendant does not bring himself within the provisions of this section, first, because it is doubtful whether it can be said that he has given any testimony in an election case, and, secondly,.

because, if he has given any, it has been given voluntarily and not under compulsion.

Having reached the conclusion that these indictments cannot be vacated because of any infraction of section 313, nor because of the question raised by an alleged commingling of the evidence relating to each offense, nor because of any alleged violation of the defendant's constitutional rights springing from the circumstance of his attendance before the grand jury and what he then said, I proceed to a consideration of the remaining grounds upon which the motion is based, and first, more particularly, as each ground applies to the felony indictment.

An indictment will be set aside, when the evidence before the grand jury is insufficient to warrant the finding of it, and such insufficiency is shown to the court by competent proof. People v. Hyler, 2 Parker, Cr. R. 570, 578, Cowles, J.; People v. Price (Sess.) 2 N. Y. Supp. 414, Nott, J.; People v. Brickner (O. & T.) 15 N. Y. Supp. 528, Rumsey, J.; People v. Edwards (O. & T.) 25 N. Y. Supp. 480, Vann, J.; People v. Vaughan, 19 Misc. Rep. 298, 42 N. Y. Supp. 959, Hurd, J.; People v. Farrell, 20 Misc. Rep. 213, 45 N. Y. Supp. 911, McMahon, J.; People v. Linderborn, 23 Misc. Rep. 426, 52 N. Y. Supp. 101, Fursman, J.; People v. Molineux, 27 Misc. Rep. 79, 58 N. Y. Supp. 155, Williams, J.; People v. Stern, 33 Misc. Rep. 455, 68 N. Y. Supp. 732, Foster, J.; People v. Bills, 44 Misc. Rep. 348, 89 N. Y. Supp. 1091, Richardson, J.; People v. Glen, 173 N. Y. 399, 66 N. E. 112, Werner, J.; People v. Sexton, 187 N. Y. 495, 511, 513, 80 N. E. 396, 116 Am. St. Rep. 621, Werner, J.

The quantum of proof requisite to warrant the finding of an indictment is determined as follows:

The Code of Criminal Procedure (section 258) provides that:

"The grand jury ought to find an indictment where all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury."

This section impliedly requires that a grand jury shall not find an indictment under any other conditions. People v. Stern, supra. This requires that the evidence before the grand jury shall be such that, if produced upon the trial and then uncontradicted and unexplained, a trial judge would be justified in not advising the jury to acquit under the provisions of section 410 of the Code of Criminal Procedure. People v. Brickner, supra. It means evidence which overcomes the presumption of the defendant's innocence. People v. Linderborn, supra; People v. Winant, 24 Misc. Rep. 361, 53 N. Y. Supp. 695. It means more evidence than is merely sufficient to render the truth of the charge probable. People v. Price, supra. It means evidence which removes all reasonable doubt as to the defendant's guilt. Code Cr. Proc. § 389; People v. Brickner, supra. The law requires, in a word, the establishment of what would be, upon a trial, a prima facie case. This means, among other things, that in the proof there shall be wanting no essential link. People v. Price, supra.

Applying the rules thus laid down, I proceed to state and analyze the felony charge. This is the method for determining, as respects that charge, what should have been the subject-matter of the evidence before

the grand jury, or, in other words, the points to which it was requisite that the evidence should have been directed. The felony charge against the defendant is contained in indictment No. 62,759, and involves an alleged violation by the defendant of subdivision 5 of section 41a of the Penal Code. That section provides that any person who "(5) knowingly permits, aids, assists, abets, procures, commands or advises another to commit any such act (referring to the acts specified in any of the preceding subdivisions of the same section) is guilty of a felony, punishable by imprisonment in a state prison for not more than five years." The act, which is alleged in the indictment as the one which the defendant aided, assisted, or abetted, was an act of alleged illegal registration by one Cartwright in violation of subdivision 2 of the same section. That subdivision provides that any person "(2) who causes or attempts to cause his name to be placed upon a list or register of voters knowing that he will not be a qualified voter in the district for which such list of register is made," is guilty of a felony. Reduced, therefore, to its simplest form of expression, the felony charge against the defendant is that he knowingly aided, assisted, or abetted one Cartwright in causing Cartwright's name to be placed upon a registry of voters, while Cartwright knew that he (Cartwright) would not be a qualified voter in the district at the election for which such registry was made. I have used only the words "aid, assist, and abet," and not the alternatives found in the statute, namely, "permits, procures, commands or advises," because these alternatives are not found in the indictment, and because in any conceivable view of the evidence before the grand jury the defendant could not be brought within them.

To establish the defense as thus stated, proof was required going to the point: First, that the defendant knew that Cartwright would not be a qualified voter in the Sixth election district of the Third assembly district in New York county (that being the district in which Cartwright registered) at the election to be held on November 5, 1907, or, in other words, a knowledge of Cartwright's lack of qualifications in some respect, including his qualifications on the score of age, citizenship, inhabitancy, or residence; second, that the defendant should know that Cartwright was aware of his own disqualification; third, that the defendant should know that Cartwright, although aware of his general disqualification, or disqualification for registry, at a particular place, proposed to register at such place; fourth, that the defendant, with such knowledge, should thereupon purposely do something with the object of aiding, assisting, or abetting Cartwright, in Cartwright's efforts to cause his (Cartwright's) registry; and, fifth, that that something should in fact have aided, assisted, or abetted Cartwright in registering.

These subdivisions constitute the elements of the alleged crime. Each is an essential. If one is lacking the crime is not committed. To warrant an indictment on this charge, it was essential that the grand jury should have some evidence bearing upon and tending to establish each of these elements. We have seen to what extent the law required that the proof should go or the quantum of evidence required in the finding of an indictment. Bearing these rules in mind, and with our attention directed by an analysis of the elements in the crime to the

points to which it was requisite for the evidence to extend, I proceed to summarize and then to analyze the evidence adduced for the purpose of determining whether within the rules, in the light of the elements in the offense, the evidence was sufficient to warrant an indictment.

It appears, from the evidence taken before the grand jury, by the testimony of one Robert H. Cartwright: That he (Cartwright) was a newspaper man, employed on the New York Journal, and one of a class of men employed in the Criminal Court Building, in the borough of Manhattan, who customarily look upon it as a legal residence, receiving practically all their letters there, and many of them staying until 2 o'clock in the morning. That for some time he had been acquainted with the defendant, who was a coroner having his office in the Criminal Court Building and his residence in the immediate neighborhood of that building, namely, at No. 186 Lafayette street. That his relations with the defendant were casual or friendly, and upon one occasion, during the Thaw trial, he had slept on a lounge in the dining room of the defendant's house, and on two or three occasions had dined at the defendant's house with the defendant and the defendant's family. That he (Cartwright) was a married man, with children, and for between three and four years he had occupied as lessee a house and grounds at Great Kills, Staten Island, in the borough of Richmond and state of New York. That during the early part of the first two weeks of September, 1907, he had had, in a saloon, a conversation with the defendant about Italian banking methods, in which the subject of registration or voting was not mentioned at the close of which he said to the defendant: "I think I will take a room in your house." To which the defendant laughingly replied: "Take the entire house." Cartwright purports to repeat this conversation, giving it as follows: "I said: 'I will take rooms in your house.' He laughed and said: 'Take the entire house, including the roof garden on top.'" He purports to repeat it again as follows: "I said: 'Coroner, where is your house located, in what district?' He said: 'The third.' I said: 'I guess I will take a room from you.' He laughed and said: 'Take the entire house and the roof garden.'" No price was fixed for the room, and Cartwright expected to obtain it gratuitously. Subsequently, according to Cartwright, he met the defendant and the defendant's wife, and said to the latter: "I am going to be one of your boarders—one of your star boarders." And the defendant said: "Star boarders are fatal, so be careful, Mrs. Acritelli." But nothing was said about registration or voting.

Subsequently to the September conversation, according to Cartwright, he did not, as a matter of fact, sleep in the defendant's house. On October 14, 1907, being the last day of registration, Cartwright appeared before the registry board in the Sixth election district of the Third assembly district of New York county and registered as a voter. The entry of his registration was offered and received in evidence, and by such entry the following appeared:

"Name of electors. Surname, Cartwright. Christian name, Robert H. Residence, number or other designation, 186. Street or avenue, Lafayette. Number of room or floor occupied by elector, third. Age of elector, 37. In state, twenty-one. In county, months, ——— (either eighteen or nineteen,

there being an erasure). In the election district, six months. Country of
nativity, England. If naturalized citizen, date of naturalization certificate,
September 26, 1906. Court issuing naturalization certificate, Southern District
of New York. State, New York. City or town, same. Number and name
of street or avenue, ———; first vote."

According to the testimony of one John Courtney, employed as an
investigator by the Independence League, and one R. Blumenberg, a
painter by trade, employed in like capacity, the defendant stated, in
substance, to Blumenberg, in the presence of Courtney, on October 21,
1907, at the defendant's house, No. 186 Lafayette street, borough of
Manhattan, that Robert H. Cartwright lived there, and that he had
lived there for several months, and that Cartwright was a newspaper
man, employed at night, and who slept in the daytime, and that he
(the defendant) had 14 rooms on the sixth floor of the house, and let
out four to four men, of whom Cartwright was one. A police officer
by the name of Kuhn testified that he was officially employed in ex-
amining the registry lists, and that some time in October, 1907, the
defendant said to him that Cartwright lived at No. 186 Lafayette street,
but did not say how long Cartwright had lived there.

The above is a summary of all the competent evidence having any
bearing upon the alleged commission of a crime by this defendant. Be-
fore analyzing this evidence with a view to testing its sufficiency in
the light of the quantum of the proof required and the points to which
that proof must go, time will be saved by considering at the threshold
whether or not on the felony charge Cartwright is to be considered as
an accomplice of the defendant, for upon the decision of that question
depends in part the quantum of proof, if any, required outside of the
evidence of Cartwright. "An accomplice is an associate in crime, a
partner or partaker of the guilt, any participant in an offense." People
v. Winant, 24 Misc. Rep. 361, 363, 53 N. Y. Supp. 695, Dickey, J.
"One culpably implicated in the commission of the offense." People
v. Vedder, 98 N. Y. 630. "An accomplice is a person involved, either
directly or indirectly, in the commission of a crime. To render him
such he must in some manner aid or assist or participate in the crim-
inal act, and by that connection he becomes equally involved in guilt
with the other party by reason of the criminal transaction." People v.
Smith, 1 N. Y. Cr. R. 72, 75, Daniels, J. "To constitute an accomplice
one must be so connected with a crime that at common law he might
himself have been convicted either as the principal or as an accessory
before the fact. To warrant such a conviction the one accused must
have taken part in the perpetration of or preparation for the crime, with
intent to assist in the crime." People v. Zucker, 20 App. Div. 363, 46
N. Y. Supp. 766. In the first of the cases cited (People v. Winant,
supra), it was held that a bribe taker was to be considered as an ac-
complice of the bribe giver. In the next case cited (People v. Vedder,
supra), it was held that a woman upon whom an abortion was commit-
ted was not an accomplice of the abortionist. In the third case cited
(People v. Smith, supra), it was held that a purchaser of liquor from
one who sold it without license was not an accomplice of the seller, and
in the last case cited (People v. Zucker, supra), it was held that one
who, without intent to aid in the commission of the crime of arson,

in point of fact did an act which aided another in committing such crime, was not an accomplice of the incendiary.

It will be noticed that none of the cases cited relates to offenses such as it is claimed were committed by Cartwright and Acritelli. It will also, however, be noticed that, while the cases cited differ widely from each other in character, they lay down the same determining tests to ascertain whether or not a given witness is to be regarded as an accomplice of a defendant. These tests it therefore seems proper to apply by analogy to the case at bar: First, then, the test is not whether both parties have been guilty of the identical crime. Bribing a juror or offering to bribe a juror is a crime by itself under section 71 of the Penal Code, and the acceptance of a bribe by a juror is a separate offense, made so by section 72 of the Penal Code. The separate nature of the offenses (if they are separate) does not prevent one party from being the accomplice of the other. People v. Winant, supra. Second, the reason why the victim in the abortion case does not stand legally in the position of an accomplice is that she could not be indicted for abortion. People v. Vedder, supra, and cases cited. Though guilty of an offense, she was punishable by a different penalty. In the liquor case (People v. Smith, supra), the criminal act was the sale. It was not a crime to buy, and the purchaser incurred no criminal relation to the act of selling. In the arson case, the act of the alleged accomplice was itself innocent, and while, as stated, it tended to assist in the perpetration of the crime, the incentive or motive for it was not to aid in its commission. If, under the evidence produced before the grand jury, it can be said with respect to the felony charge that the defendant committed a crime, it was a crime suggested to him by the witness Cartwright. The criminal purpose, if conceived at all by the defendant, had its inception in the first, or September, conversation between Cartwright and the defendant. That conversation was initiated by Cartwright, and that which it is claimed may have involved the suggestion of an offense came from Cartwright to the defendant. The conversation had been solely about Italian banking methods, when Cartwright, without suggestion by the defendant, asked to be allowed to have a room in the defendant's house at 186 Lafayette street; he (Cartwright) having at the time in his mind a registration from such house in the event of the defendant's assent to his taking a room.

Cartwright thus conceived, according to his testimony, a purpose to commit a crime, and the indictment has been found upon the theory that he suggested to the defendant the commission of a crime, which crime was to be consummated by the concurrent act of Cartwright and the defendant; the defendant's part being, as charged in the indictment, to aid, assist, and abet Cartwright in his (Cartwright's) criminal act. Cartwright thereafter performed the criminal act, and because he performed the criminal act, to wit, the act of illegal registration, the defendant has been indicted, charged by reason of his alleged connection with such act, as having aided, assisted, and abetted in its commission. How can it then be said that Cartwright was not, if his evidence is to be believed, an associate in the crime, a partner or partaker of the guilt, a participator in the offense, one culpa-

bly implicated in its commission, one both directly and indirectly involved in its commission, one who has aided or participated or assisted in it with intent to assist in the commission of a crime, one equally involved in its guilt, one indictable for it under section 29 of the Penal Code, but for the immunity given him from the circumstances under which he testified by section 41q of the Penal Code? It is not deniable that, if Cartwright's evidence is to be believed, he was also guilty of another crime, to wit, a violation of subdivision 2 of section 41a of the Penal Code. It is also not to be denied that subdivision 5 of section 41a of the Penal Code defines a separate and distinct offense. It is not to be denied, moreover, that such an offense is one which may be committed by one person alone, and thus under circumstances where there is no accomplice. It is so committed where the crime consists of "commanding" or "advising" another to violate any of the preceding subdivisions of the same section, for the "command" may not be obeyed, or the "advice" followed, and therefore no one may become a participator in an offense which itself has been fully consummated by the mere giving of the "command" or "advice"; but where the alleged crime under this subdivision consists as charged in the indictment in this case, and as supposed to be supported by the evidence herein in "aiding, assisting and abetting," it becomes consummated only by the guilty act or attempt to commit a guilty act by another and that other thereupon becomes an accomplice. For both there is an identity of penalty.

Having reached therefore the conclusion that Cartwright is to be deemed an accomplice of the defendant with respect to the crime charged against the defendant in indictment 62,729 (the felony charge), it follows that if the provisions of section 399 of the Code of Criminal Procedure are not to be considered as relating alone to the quantum and character of evidence necessary to convict on a trial before a petty or trial jury, but also to an investigation before a grand jury preliminary to the finding of an indictment, that section requires some corroboration of Cartwright's testimony. The section in question (Code Cr. Proc. § 399) provides that "a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime," and the rule of proof thus laid down has been considered applicable to preliminary investigations before grand juries (see People v. Winant, 24 Misc. Rep. 361, 53 N. Y. Supp. 695), although seemingly slighter corroboration is required before grand juries than at a trial.

How far must the corroborative evidence go? It is not necessary that the corroborative evidence should of itself be sufficient to show the commission of a crime, nor that the whole case should be proved outside of the evidence of the accomplice, nor that the corroborative evidence should be wholly inconsistent with the defendant's innocence. It is sufficient if it tends to connect the defendant with the commission of the crime and comes from an independent source and goes to some material facts tending to show the commission of the crime, and that the defendant was implicated in it, and that it consists of something more than suspicious circumstances. See People v. Hoogh-

kerk, 96 N. Y. 149; People v. Plath, 100 N. Y. 590, 3 N. E. 790, 53 Am. Rep. 236; People v. Ogle, 104 N. Y. 511, 11 N. E. 53; People v. Elliot, 106 N. Y. 292, 12 N. E. 602; People v. Mayhew, 150 N. Y. 346, 353, 44 N. E. 971; People v. Winant, 24 Misc. Rep. 361, 53 N. Y. Supp. 695.

To determine whether or not Cartwright was corroborated, or sufficiently corroborated, it is necessary to bear in mind the essential elements in the felony crime as charged against Acritelli, and in the light of these elements to analyze the testimony as given before the grand jury.

Outside of the evidence of Cartwright, where is there any evidence that Cartwright did not lawfully register and was not a qualified voter in the district in which he registered? There is none. Outside of the evidence of Cartwright, where is there any evidence even creating a suspicion that the defendant knew that Cartwright intended to register from No. 186 Lafayette street? If we start with the premise that what Cartwright said respecting his Staten Island home is true, then the defendant's alleged answers, on October 21st, to questions put to him, respecting Cartwright's residence being false, tend to corroborate the testimony of Cartwright as to the crime being more consistent with the defendant's guilt than innocence. But the trouble is not so much that Cartwright was not corroborated as to his Staten Island residence, as that the indictment by its allegations affirmatively shows that he was disbelieved by the grand jury upon this point. And if the defendant's answers as to Cartwright's residence were true, they furnish no proof of guilt. These alleged answers by the defendant furnish the only evidence upon which the contention is made that Cartwright was corroborated. For the reasons stated, they are insufficient for that purpose. Corroboration to the extent indicated by the statute being required, its absence is fatal to the felony indictment.

But if for the purpose of argument it be assumed that Cartwright was not an accomplice, and that no corroboration of his testimony was required, the evidence before the grand jury still falls short of the quantum of proof required. This appears from the following considerations: The initial question was: What was Cartwright's residence as affecting Cartwright's qualifications as a voter in the election district in question? As to this there was proof that on the 14th of October, 1907, being a registration day, Cartwright appeared before the board of registry in the election district named in the indictment, and presented himself as a person qualified to be registered, and that thereupon, responsive to certain questions put to him by the election officers, pursuant to statutory requirements, he answered certain questions in such a way as to indicate that he would be a person qualified to vote in that election district at the election to be held on November 5, 1907; that the election officers, composed of representatives of both parties, presumably had no reason to question the truthfulness of such answers, and, seemingly, did not question them, because they did not require Cartwright to take the challenge oath provided by law to be administered where inspectors have reason to doubt the truthfulness of answers given by an applicant for registry, or the right of the applicant to be registered.

These election officers thereupon, although required by law to only register duly qualified voters (Laws 1899, p. 1387, c. 630, § 32, subd. 1), placed Cartwright's name upon the registry list, and, while their action in this regard was ministerial, Cartwright having answered the required questions, it is questionable whether if Cartwright had, in point of fact, been disqualified from registering, the election board would, at the instance of Cartwright, have been mandamused to register him had they declined to do so. People ex rel. Sherwood v. State Board of Canvassers, In re, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646. The registry list, under the law, remained open for inspection and for correction; but, so far as the registration of Cartwright is concerned, it affirmatively appeared by the production of this registry list that it contained Cartwright's name and had not been corrected or changed in this regard. It appeared that, pursuant to law (Laws 1899, p. 1387, c. 630, § 32, subd. 3), subsequently to Cartwright's registry an investigation had been made by the police captain of the precinct into the qualifications of the persons who had registered at the polling place in question, including an investigation into the qualifications of Cartwright as a voter, but that this investigation did not lead the police to the conclusion that Cartwright was disqualified.

It further appeared that a householder, being the defendant, when inquired of concerning the qualifications of Cartwright as a voter, by two persons investigating the registry list and employed for that purpose in a quasi detective capacity by the Independence League, had answered such queries in a way to indicate that Cartwright was a qualified voter. The uncorrected registry list was at least prima facie evidence of Cartwright's qualifications. To this point all the evidence before the grand jury tended to show that Cartwright would have been a qualified voter in the election district in question at the election of November 5, 1907.

Cartwright, however, appeared before the grand jury and testified, and his testimony is logically divisible into two parts, namely: First, that designed to show that his residence was elsewhere than in the county of New York, and therefore elsewhere than in the election district in question; and, second, that designed to show what his relations were to the premises No. 186 Lafayette street as he (Cartwright) understood those relations. The first part of his testimony was, substantially, to the effect that at the time of giving such testimony he was, and for between three and four years prior thereto had been, a householder, being the lessee and occupant of a house and some four acres of ground at Great Kills, Staten Island, occupied by himself, his wife, and three children as a home; that his lessor was one Biglin, employed in connection with the New York Custom House; and that he (Cartwright) customarily went nightly to his Staten Island home. This testimony, if believed, established, so far as such testimony could establish, that Cartwright was an inhabitant of the state of New York and a resident of the county of Richmond. One part of his testimony was just as credible as any other part. It affirmatively appears by the highest, because the most formal, proof that the grand jury, in part, disbelieved what Cartwright said, because, when they came to frame the felony indictment against the defendant Acritelli, they described Cart-

wright as "late of the borough of Manhattan," which he was not if what he had sworn to before the grand jury was true, and because they charge that Cartwright well knew that he · had not been an inhabitant of the state for over a year, when, if Cartwright's testimony were true, he had been such an inhabitant.

It is true that the part of the indictment which describes Cartwright as "late of the borough of Manhattan" is a mere matter of description and not a matter of going to the substance of the indictment, in the sense of its being a matter requisite for proof upon a trial, as stated in the indictment; but it is a significant fact that in connection with a crime, involving as its first premise the nonresidence of Cartwright in the county of New York, the grand jury, after hearing all the evidence, should have deliberately described him as "late of the borough of Manhattan." It is, of course, also true that upon a trial of the action it would not be necessary to prove that Cartwright had not been an inhabitant of the state for over a year, provided proof were made that Cartwright was, because of lack of residence for the requisite time in the county of New York, or within the election district in question, disqualified from registering at the place where he registered; but here again, if the grand jury had credited what Cartwright said regarding his four years' continuous residence in the borough of Richmond, they could not have charged that he had not been an inhabitant of the state for over a year.

The statements made by Cartwright at the time he registered were separate statements, responsive to separate inquiries. Any of them, if false, disqualified him and rendered him amenable to the criminal law. Cartwright's statement regarding his Staten Island home and therein his inhabitancy of the state for over a year cannot be ascribed to mistake. If false, it was a deliberate falsehood respecting a material matter, and the grand jury might, very properly, have applied the maxim, although not strictly one of criminal law, "falsus in uno, falsus in omnibus," and, although they were not compelled to apply this maxim, there is no reason appearing upon the record why they should have credited certain of the oral statements made by Cartwright to them and discredited others. It therefore follows that the finding of the grand jury, so far as it involves the nonresidence of Cartwright in the election district in question, is predicated solely upon the testimony of Cartwright, a material portion of whose testimony has been concededly discredited and disbelieved by the grand jury. If we turn to that part of Cartwright's testimony which relates to his connection with No. 186 Lafayette street, we find that at a date sufficiently early he obtained, if his testimony is to be believed, a licensee's privilege in the premises in question. In other words, after his conversation with the defendant Acritelli, Cartwright would not have been a trespasser in entering upon those premises and living upon them. It is true that the license was revocable, but it is true that there is no evidence in point of fact that it was ever revoked. The testimony relating to Cartwright's residence upon Staten Island was evidently discredited by the grand jury, and he was therefore, so far as is disclosed by the evidence, without residence other than such as he may have acquired at No. 186 Lafayette street, and, practically a

homeless man, he evidently contemplated that under the circumstances he could acquire a residence for voting purposes at No. 186 Lafayette street by obtaining the defendant's permission to occupy a portion of those premises.

Residence, it has been frequently held, is largely a matter of intention. That is the very language used in an extract from an opinion by the Attorney General appearing in Jewett's Election Manual. Jewett's Election Manual 1907, p. 378. It is a word which is ordinarily distinguishable from domicile, and in cases in which it is distinguished from domicile, it imports less fixity of tenure. It is not dependent upon the quantity of possession that a man may have about him at a given place, nor necessarily upon the length of time that he spends at a particular place. And this is particularly so in the absence of proof that a man spends the larger part of his time at some other place; but the prevailing authorities in this state seem to hold that, despite the use in a seemingly contrastive manner of the two terms "residence" and "domicile" in the election law (see Laws 1896, pp. 913, 914, c. 909, § 34, subds. 1, 2, as amended), that those terms are to be regarded as practically synonymous where the question of the exercise of a franchise is concerned, and that in the case of a voter there must not only be an intention to regard a certain place as his voting residence, but conduct appropriate to and indicative of that intention. See Silvey v. Lindsay, 107 N. Y. 59, 13 N. E. 444.

Tested by these authorities, if Cartwright's testimony is to be believed, and to this extent the grand jury appear to have believed it, he did not have that residence at 186 Lafayette street which qualified him to register from that place. Second, what was Cartwright's knowledge when he registered that he was disqualified from registering? If his testimony is to be believed, and the grand jury believed it, he had such knowledge. Knowledge merely means "knowledge that the facts exist which constitute the act or omission a crime, and does not require a knowledge of the unlawfulness of the act or omission." Pen. Code, § 718, subd. 4. Third, what competent evidence is there that the defendant knew that Cartwright proposed to register from No. 186 Lafayette street? Or, fourth, that he knowingly aided, assisted, and abetted him to do so? It is plain that there is none. While, therefore, there is evidence which, if believed, shows that Cartwright violated subdivision 2 of section 41a of the Penal Code, there is none, or there is not sufficient evidence, that the defendant violated subdivision 5 of the same section as charged in the felony indictment. The insufficiency of legal and competent evidence before the grand jury thus becomes the first ground for granting, as to the felony indictment, this motion.

An indictment may, moreover, be set aside because of the reception by the grand jury of illegal or incompetent testimony. The statute provides that "the grand jury can receive none but legal evidence." Code Cr. Proc. § 256. While, in the absence of proof to the contrary, the presumption is in favor of the legality of the proceedings of a grand jury, where the minutes of the testimony taken before the grand jury are before the court, as is the case on this motion, the motion is to be determined on such evidence and not on presumptions.

The section referred to in effect requires that investigations before grand juries shall be made in accordance with the established rules of evidence, and that the evidence received shall be competent legal evidence, namely, such as is legitimate and proper before a trial jury. Although this section, as well as some others, in its immediate context is primarily intended as a rule for the guidance of grand jurors for the conscious violation of which they can perhaps be at least admonished by the court, its secondary and more useful purpose is to safeguard the inherent and constitutional rights of the citizen in his contact with judicial proceedings. As so considered, it declares a rule for the violation of which to his injury an individual, under certain circumstances, may obtain redress. This redress is afforded by granting a motion to dismiss an indictment where it appears to the court by competent evidence that the indictment is founded solely upon illegal evidence, or to such an extent upon illegal evidence as to indicate that the indictment resulted from prejudice or was found in willful disregard of the rights of the accused. On the other hand, the mere reception of some improper or illegal evidence will not vitiate an indictment where there is sufficient competent evidence to sustain it, unless it clearly appears that the illegal evidence received improperly influenced the minds of the grand jurors. In other words, it would seem that, where the grand jury have had before them enough competent evidence to sustain an indictment, the burden is thrown upon one who seeks to have such an indictment dismissed because of the reception of incompetent evidence of showing that he was prejudiced by the reception of such incompetent evidence. This latter rule, if deemed established (and the cases are not entirely clear on the point), is perhaps at variance with the analogies and is the outcome of those days when grand juries were not attended by stenographers, and the evidence, as a result, was but imperfectly transcribed, when the public prosecutor was more frequently absent than present in the grand jury room, and witnesses were questioned by laymen, and when fear was entertained that, if a hard and fast rule were laid down, the reception of any incompetent evidence would ipso facto vitiate an indictment, those interested in shielding the suspected or guilty might volunteer incompetent matter and at will render the proceedings of the grand jury abortive. Modern methods and conditions, as illustrated in the case at bar, largely weaken the reasons upon which the rule was founded and at least require that it shall not be extended. In the case at bar, a stenographer was present in the grand jury room, and the evidence taken before the grand jury, fully transcribed, is spread before the court on this motion with the fullness and accuracy with which evidence is presented to an appellate court on appeal from a trial before a petty jury. In the case at bar, the witnesses were interrogated by a deputy Attorney General of the state, and nothing not responsive to questions put has crept into the record. The rules stated were recognized and applied in the following cases: People v. Brickner (O. & T.) 15 N. Y. Supp. 528; People v. Briggs, 60 How. Prac. 17; People v. Farrell, 20 Misc. Rep. 213, 45 N. Y. Supp. 911; People v. Linderborn, 23 Misc. Rep. 426, 52 N. Y. Supp. 101; People v. Molineux, 27 Misc. Rep. 79, 58 N. Y. Supp. 155; People v.

Sexton, 42 Misc. Rep. 312, 86 N. Y. Supp. 517; People v. Bills, 44 Misc. Rep. 348, 89 N. Y. Supp. 1091.

The application of these rules to the case at bar requires that three questions shall be answered: First, did the grand jury receive illegal evidence? Second, was there enough competent evidence to support the indictment? And, third, if illegal evidence was received, does it clearly appear that the illegal evidence improperly influenced the minds of the grand jury?

I have reached the conclusion, from an examination of the minutes of the grand jury, that that body received in the case at bar illegal evidence. The evidence so received consisted in part of testimony seemingly unrelated to the issues, by which I mean such as had no apparent bearing upon the question of the guilt or innocence of the defendant of the charge contained in either indictment. Such is the entire testimony of the witness Rice, and this is conceded to be so by the learned Deputy Attorney General in his brief, submitted on this motion. This is so of that portion of the witness Cartwright's testimony responsive to questions relating to one Darcy, and to one Cullen, and to one Coridi. This is also possibly true of that portion of the witness Courtney's testimony relating to one Cullen, one Packard, and one Coridi. This is true of the letter Exhibit 1. This is true of that portion of the testimony of McGowan relating to one Antonio Coridi, and to Exhibit 3, relating to one Coridi, to that portion of his testimony relating to one Cullen, and to Exhibit 4, relating to such Cullen, and to that portion of McGowan's testimony relating to one Packard, and to Exhibit 5, relating to said Packard, and this is also possibly true of those portions of the witness Blumenberg's testimony relating to Coridi, Packard, and Cullen, and to that portion of the witness Kuhn's testimony relating to Coridi and Cullen. As there is nothing in any of this testimony which bears upon the guilt or innocence of the defendant of the felony charge, or even upon his guilt or innocence of the misdemeanor charge, it was irrelevant and immaterial, and upon a trial of the felony charge would certainly have been excluded if objected to on either of those grounds.

The minutes of the grand jury, as submitted to me, indicate that that body was engaged in a continuous investigation into alleged violations of the election law, some of which apparently, it had been suggested, were committed by persons registering from the defendant's house, No. 186 Lafayette street, and that a portion of such continuous investigation has been segregated for the perusal of the court, and denominated the minutes of the proceeding which resulted in the two indictments attacked by this motion. I draw this inference, in part, from the fact that the initial question to the witness Cartwright is: "I am going to ask you to go over your testimony of yesterday." In part, from the fact that on page 6 of the minutes, and while manifestly not referring to anything previously appearing upon the minutes as supplied to the court, the Deputy Attorney General, addressing the witness Cartwright, says to him, "Mr. Cartwright, these gentlemen (referring to the grand jury) have heard that story. I want to go over it and make it as brief as I can." In part, from the context and nature of the immaterial and irrelevant evidence above referred to, and in

part from people's Exhibit 6, being a letter from the defendant to the foreman of the grand jury, and written before the reception of the defendant's evidence, as contained in the minutes, in which the defendant refers to a letter dated October 24th, in which the defendant states that he had then already appeared before that grand jury as a witness in an investigation before that grand jury into matters referred to in Exhibit 1. Not enough of this immaterial evidence, which in all probability related to other and unrelated offenses, is submitted to me to enable me to say that it was calculated to create a suspicion in the minds of the grand jurors that the defendant was guilty of other violations of law than those charged in the indictments before me. Whatever my surmise in this regard may be, there is not enough before me to justify me in holding that it was not merely illegal, but also prejudicial, and, if it were the only illegal evidence received, I would not feel justified in dismissing either indictment because of its reception. But it was not the only illegal evidence received. After the witness Cartwright had repeated at the instance of the Deputy Attorney General three times an alleged conversation between the witness and the defendant, and upon which conversation the felony charge against the defendant is mainly predicated, and had each time repeated it without substantial variation, and had detailed the circumstances under which it was had, and had shown no lapse of memory, and had categorically stated that nothing had been said in it regarding either registration or voting, he was asked by the Deputy Attorney General and answered the following questions in the following manner:

"Now there was something in that conversation, Cartwright, that led Acritelli (the defendant) to know that you wanted the room for the purpose of registration, wasn't there? I should imagine so. And you understood that Coroner Acritelli would stand for your registering from 186? That was my interpretation of his remark. Was that his interpretation of it according to your opinion? Yes, sir."

And, again:

"And it was clearly understood between you and Acritelli that he was to stand for the fact that you were a qualified voter from No. 186 Lafayette street? As far as my inference from the conversation was concerned."

These questions called for an opinion by Cartwright as to matters as to which opinion evidence was not competent. The first question called upon Cartwright to express an opinion as to whether or not there was something in a certain conversation between himself and the defendant which would lead the defendant to know a purpose entertained by Cartwright but not disclosed to the defendant by words. The second asked Cartwright for his understanding of the defendant's frame of mind upon a subject upon which the defendant had expressed himself neither by words nor conduct. The third called for Cartwright's opinion of the defendant's interpretation of a remark made by the defendant to Cartwright, and the last was a suggestion by the Deputy Attorney General to Cartwright of what he considered a possible interpretation of the conversation between Cartwright and this defendant, coupled with a query as to whether Cartwright's understanding of the defendant's understanding was as suggested by the question.

110 N.Y.S.—29

In Cutler v. Carpenter, 1 Cow. 81, a witness who, on examination in chief, had sworn to a conversation and stated that there was nothing in it from which he could say that it alluded to a particular time, was not permitted to express his belief as to what time was intended. In Gibson v. Williams, 4 Wend. 320, 325, two witnesses were not permitted to testify as to what they understood that the defendant had meant when he used certain language. In Weber v. Kingsland, 8 Bosw. 415, it was held upon appeal to have been error to allow a witness to testify as to what impression was produced on his mind by what passed, and that the inquiry should have been as to what was said and done. In Major v. Spies, 66 Barb. 576, it was held on appeal that it was proper for the court to exclude a question put to the defendant directed to ascertain what was in the plaintiff's mind. In Wilder v. Peabody, 21 Hun, 376, it was held on appeal that the trial court had properly excluded a question directed to a witness asking what impression a certain conversation had made on the witness' mind. In People v. Parr, 42 Hun, 313, it was held on appeal to have been error in the trial court to permit a witness to answer that, after reading an article, he had recognized that it applied to a certain person, and then permit him to name such person. In Swan v. People, 13 Wkly. Dig. 519, it was held on appeal to have been error in the trial court to permit a witness to state what impression he got from what was said. In Walker v. Dunspaugh, 20 N. Y. 170, it was held on appeal to have been error to permit a witness upon the trial to state what person he understood was referred to in a certain conversation when the name Ketchum was used. The error, however, in view of the facts of that case, was held not to have been prejudicial. In Wallis v. Randall, 81 N. Y. 164, it was intimated upon appeal that it was not competent for a witness to testify as to what another person did or did not understand, but the objection taken to the evidence was held in that case not to have been sufficient to properly raise the question upon appeal. In Carr v. Breese, 81 N. Y. 584, 593, it was held on appeal to have been error to allow a witness upon the trial to state what he understood respecting a certain matter from a conversation as to which he testified. In Reilly v. Mayor, 96 N. Y. 331, it was held on appeal to have been proper for the trial court to exclude evidence of a secret and undisclosed intent. In Abbott v. People, 86 N. Y. 460, it was held on appeal to have been proper in the trial to exclude evidence by a witness as to what passed in a witness' mind and what he understood from another's conduct. In People v. Sharp, 107 N. Y. 427, 461, 14 N. E. 319, 1 Am. St. Rep. 851, it was held on appeal to have been prejudicial error committed on the trial to receive evidence as to the opinion or thought or understanding of one witness as to what was in the mind of another person at the time of a transaction. It is true that in that case the particular transaction was not with the defendant in that case, but the objection to the evidence did not rest upon that point alone. In the case of People v. McLaughlin, 150 N. Y. 365, 393, 44 N. E. 1017, Martin, J., it was held on appeal that testimony to prove the conclusions of a witness or the purpose or object of another person was inadmissible. The item of evidence objected to in that case was a memorandum, but the court in reasoning as to

its inadmissibility in terms applied to it the test which it states would have been applicable in the case of oral testimony of like purport. And, finally, in the case of People v. Mingey, 190 N. Y. 61, 64, 82 N. E. 728, Id. 118 App. Div. 652, 103 N. Y. Supp. 627, it is stated that it is a fundamental general rule of evidence that a witness must confine his answer to what was then his personal knowledge, and also that he should not testify to conclusions of fact or of law.

In some of these cases it will be seen that the question called for an expression of opinion where opinion evidence was incompetent. In some the question called for the operation of the witness' mind, his impression, his belief, his understanding, his purpose. In some it called for the witness' opinion of the operations of another's mind; that is to say, what that other's impressions, beliefs, understandings, or purposes were. And in all it was held objectionable, and in all but one not merely objectionable but prejudicial.

In the case at bar, the objectionable evidence calls for all three: Opinion evidence, when opinion evidence, as such, is improper; evidence as to the operation of the witness' mind, his belief, understanding and purpose, when such evidence was improper; and evidence as to the witness' opinion as to what was in another's mind, that is to say, the defendant's mind. This improper evidence in the case at bar was also plainly prejudicial. It and it alone gave color to what was otherwise the colorless and, so far as the defendant was concerned, nonincriminating evidence of Cartwright. Without the answers made responsive to these questions an inference of innocence was permissible from the evidence, and was therefore the inference which the grand jury was required to draw from it. These questions were aimed to get the witness Cartwright to adopt as his own the incriminating inference contained in and suggested by the questions themselves, and as the result of his answers to them, so far as he adopted such incriminating inferences, to lead the grand jury in turn to adopt such inferences as their own. I am forced to the conclusion that they accomplished this result and produced at least the felony indictment where but for them it would not have been found. The reception of this evidence, especially in the light of what has been said respecting the general insufficiency of the proof, requires and now becomes the second ground for the dismissal of the felony indictment.

Passing now to the misdemeanor indictment under section 41d of the Penal Code, we find that that section provides:

"Any person dwelling in a building in a city who willfully refuses to truly answer any question, or who shall give false answers to any questions asked by any elector of such city between the first meeting of the boards of registry therein for any election and the closing of the polls at such election, relating to the residence and qualifications as a voter of any person dwelling in such building or of any person who appears upon the list or registry of voters made by a board of registry as residing at such building, or who knowingly harbors or conceals any person who has falsely registered as a voter, or who shall rent any room or rooms, or bed or beds, to any person to be used by such person for himself or any other person for the purpose of unlawfully registering or voting therefrom, is guilty of a misdemeanor."

The specific charge against the defendant under this section is that on the 14th day of October, and while dwelling in a building in this

city, he gave false answers to questions asked by an elector of this city, between a first meeting of the boards of registration therein for an election and the closing of the polls at such election, relating to the residence and qualifications as a voter of a certain Robert H. Cartwright, who, it is alleged, at that time appeared upon the list and registry of voters made by a board of registry as residing at such building.

Reference to the statute shows that, before this indictment could be properly found, it was requisite that the grand jury should have before it legal and competent evidence sufficient to overcome the presumption of innocence and to remove reasonable doubt as to the defendant's guilt on each and all of the following points, namely: (1) That the defendant was a dweller in a building in a city; (2) that he gave false answers to questions asked of him; (3) that those questions were asked of him by an elector of the city in which the defendant dwelt; (4) that they were asked between the first meeting of the board of registry therein for an election and the closing of the polls at such election; (5) that they related to the residence and qualifications as a voter of a person who either in the alternative dwelt in such building, or whose name appeared upon the list of registry of voters made by a board of registry as residing at such building. These elements are the constituent elements in the crime. There was evidence before the grand jury that the defendant was a dweller in a house in a city, there was evidence before the grand jury that certain questions were asked of the defendant, there was some evidence before the grand jury that those questions were asked within the time mentioned in the law, there was some evidence before the grand jury that those questions related to the residence and qualifications of one Cartwright, and there was evidence before the grand jury that Cartwright was a person who appeared upon the registry or list as a person residing at the house of the defendant. There was no sufficient evidence for the reasons heretofore stated that the answers made by the defendant to the questions put to him were false. There was no sufficient evidence before the grand jury that the questions were put to the defendant by an elector of the city. The only evidence tending to show that the defendant's answers to the questions were false is the testimony of Cartwright. His testimony, if believed by the grand jury, would have been sufficient, if corroborated.

The offense charged is a misdemeanor. In misdemeanors all concerned in the commission of the crime are principals. The testimony of Cartwright, if believed, shows that the offense had its inception in Cartwright's mind; that he instigated it; that he approached the defendant upon the subject. This particular offense could not have been consummated without the aid and procurement of Cartwright, because, on the theory of the prosecution, the answers did not relate to a person who actually lived in the defendant's house, but to a person who appeared upon the registry list as living there, and it required the individual action of Cartwright in appearing before the registry board to place himself upon the registry list. Section 399 of the Code of Criminal Procedure does not permit of a conviction upon the uncorroborated evidence of an accomplice, and I think it applicable

to the testimony of one who, because of the nature of the offense, is a principal. The person to whom the answers were given, and who asked the questions, is not shown to have been an elector of the city. The evidence does not disclose that he lived in the city of New York, and the evidence does not disclose that he was 21 years of age or over. The most we have is a statement that he lived at a given number on an avenue not said to be in the city of New York, and that he registered as a voter. If registering as a voter were conclusive on the question of who was an elector, the indictment would necessarily fail, because it was in evidence that Cartwright himself had registered. The provision that the questions must be put by an elector cannot be expunged from the statute nor treated as meaningless. It was to prevent impertinent questions by persons having no interest in the putting of the questions. It was to confine the right of questioning to those who, as electors of the city, had an interest in the election. In the case of this misdemeanor indictment, it is possible that the lacking proof, being in part technical, can be supplied, if the matter is again resubmitted to the grand jury, and in reaching the conclusion that this indictment should be dismissed because founded upon insufficient evidence, I direct that the matters therein referred to be resubmitted to the grand jury.

It remains in conclusion to again, but in a different manner, refer to the fact that the defendant appeared before the grand jury under the circumstances disclosed. I think that when he appeared before them and submitted to be sworn that it at least would have been well if the grand jury had stated to him the nature of the charge against him and possibly even the substance of the testimony adduced, in order that he might thereupon, and when informed of what had been said about him and against him, make such explanation as his presence in the grand jury room indicated that he was willing to make. It is true that the grand jury said they would hear what he had to say, but this remark was an idle formality, because the defendant was in no position to say anything, not having been apprised as to the matters about which it would be to his interest to speak. This was in the nature of a moral obligation on the part of the jurors to the defendant, and whenever it is apparent that for any reason, whether by inadvertence, as doubtless in this case, or otherwise, that the moral obligation which jurors owe to a defendant is fulfilled, the court should not hesitate, if legal grounds exist, to grant the defendant relief.

In the case of the felony indictment, unlike the misdemeanor indictment, the missing proof is not technical proof, and the learned Deputy Attorney General has, with characteristic frankness, stated in the affidavit filed with the court, in opposition to the motion to grant leave to inspect the minutes of the grand jury, that these minutes contain substantially all the proof against the defendant which the people have at their command.

This being so, it would not be proper, unless application is made in that behalf, to direct the resubmission of the felony indictment, and that indictment is therefore dismissed without such direction.

Ordered accordingly.